DERMOTT *v.* STINSON.

Opinion delivered May 24, 1920.

1. ADVERSE POSSESSION—EVIDENCE.—In a suit by a property owner to enjoin a city from opening an alleged common, evidence *held* to show that the title to such common was in dispute, that the common was enclosed in separate inclosures by the owners of abutting lots, that the character of these inclosures was such as to give to the members of the city council notice that such owners claimed adversely.

2. ADVERSE POSSESSION—CONTINUITY.—A so-called contract whereby a city recognized that an abutting owner was in adverse possession of a portion of a common claimed by the city, and agreed that, if the abutting owner should ever be divested of such portion of the common, the city would repay him all sums expended in the construction of a sidewalk along the street *held* not a recognition by such abutting owner of title in the city to the land in controversy.

3. ADVERSE POSSESSION—TITLE.—Where an abutting owner held possession of a portion of a common adversely, openly and continuously for the statutory period, he acquired title by adverse possession.

4. ADVERSE POSSESSION—ESTOPPEL.—Where an abutting owner acquired title to a portion of an alleged common by adverse possession, the fact that the city agreed with him that if he should ever be divested thereof the city would repay to him all sums expended in constructing a sidewalk and that the city did refund such sums to him did not estop him from asserting such title by adverse possession.

Appeal from Chicot Chancery Court; *N. B. Scott,* Special Chancellor; affirmed.

*D. Dudley Crenshaw,* for appellants.

1. Chancery cases on appeal are tried *de novo.* 197 S. W. 1160; 188 *Id.* 1160; 125 Ark. 364; 93 *Id.* 394; 79 *Id.* 577; 99 *Id.* 218; 125 S. W. 422; 96 *Id.* 134; 138 *Id.* 978. The findings of the chancellor are persuasive only. 2 R. C. L., pp. 203-4.

2. The findings of the chancellor are clearly against the preponderance of the evidence and the decree should be reversed. 34 Ark. 212.

3. Where lands are occupied permissively and the use and occupation is not manifestly inconsistent with the right of the grantor, notice of hostility of the claim must in some way be brought home to the grantee before the statute of limitations will begin to run. 85 Ark. 520; 69 *Id.* 562; 58 *Id.* 142; 65 S. W. 1048; 23 *Id.* 876; 1 Am. & Eng. Enc. Law (2 ed.), 818-19; 25 Atl. 802; 9 N. E. 269-273. The owners of land on a platted street had notice of the dedication of the street and are presumed to have knowledge of the city's legal right to open the street in its own time. 115 S. W. 371. See, also, 48 S. W. 807. What is true of streets is true also of commons. 3 Dillon, Mun. Corp. (5 ed.), §§ 1102-1160.

4. The burden was on appellee to show that no common existed. 77 Ark. 177; 90 S. W. 1003. The common undoubtedly existed. It was dedicated to the public, which was not revocable. 90 S. W. 1003; 97 *Id.* 1034; 109 *Id.* 541; 115 *Id.* 379; 121 *Id.* 395; 184 *Id.* 449; 204 *Id.* 607; 9 A. & E. Enc. Law (2 ed.), 57-59; 8 R. C. L. 894-896. Appellee is estopped to deny the dedication.

5. The doctrine of *laches* does not apply here. 67 Ark. 320; 55 S. W. 16; 109 *Id.* 541.

6. Appellee does not come into equity with clean hands. 76 N. Y. 108; 32 Am. Rep. 286; 10 R. C. L. 389-390.

*Streett & Burnside,* for appellee.

Appellee's right to relief is based upon title by open, notorious and adverse possession for more than thirty-five years, and the relief prayed for was properly granted and the findings are fully sustained by the testimony. 80 Ark. 578; 111 *Id.* 197; 80 *Id.* 444; 118 *Id.* 10; 34 *Id.* 598; 66 *Id.* 26. Appellee was not estopped. 73 Ark. 110. Appellants' occupancy of the land was not inconsistent with appellee's rights. 114 Ark. 384.

Appellant is guilty of *laches.* 83 Ark. 385.

WOOD, J. The city of Dermott, through its council, passed a resolution to open a certain common within the city limits.

The appellee instituted this action against the appellants to enjoin the opening of the common. He alleged that he is the owner of lots 3 and 4 of the original hamlet of Dermott, as platted by S. A. Duke, March 30, 1882, which plat was duly recorded in Chicot County. He alleged that he occupied these lots with an additional strip contiguous thereto as his homestead, and that he and his predecessors in title had been in the continuous, open and adverse possession of same for more than thirty-five years, claiming to own same. He alleged that the strip of land which adjoined his lots is a part of what was designated in the plat filed by Duke as a common; that about the year 1883, by common consent of the owners of the lots adjoining upon said common, the same was inclosed by the respective owners, thus extending their holdings the width of each of their said lots west to the public road, which afterward was incorporated into and became a part of the main street of the city of Dermott; that until July 8, 1918, no legal steps had ever been taken to question the appellee's title or right to possession of said tract. But on the above date the city of Dermott caused notice to be served upon the appellee to vacate the property and appellants are now threatening to enter upon and tear down the fence and commit other acts of waste and trespass to the irreparable damage of

the appellee. Appellee prayed that the appellants be enjoined and that his title to the tract of land be quieted.

The appellants answered and denied the allegations of the appellee's complaint and pleaded that the appellee was estopped by an instrument which he and S. A. Duke, the original owner and dedicator of the lands then constituting the hamlet, now the city of Dermott, and others signed on March 30, 1882, and which was duly recorded on March 13, 1883. In that instrument it was recited among other things that the original plat filed by Duke was a correct plat of the hamlet of Dermott; that the streets, alleys, and commons as designated on that plat shall forever be common property for the use and benefit of the owners of property in Dermott and the public generally; that the streets, alleys, and commons should never be occupied or used for any other purpose except by the unanimous consent of every owner of real estate in the hamlet.

The appellee testified that he is the owner of lots 3 and 4 in block 4 of the original hamlet of Dermott abutting on the strip of land in controversy; that he had been in the possession of these lots since March 25, 1882, at which time he purchased the same from S. A. Duke and obtained a warranty deed, which he introduced; that he had been in possession of the strip of land in controversy immediately west of his lots and between them and Main street of the city of Dermott since his acquisition of title to the lots mentioned; that he and other parties joined with Duke, the original owner of the lots, in the deed and plat of original dedication to the hamlet of Dermott; that the fence at that date was where it is now; that a short time after this instrument was signed by him and others, the signers thereof agreed to abrogate the deed of dedication and continue their fences out to the boundary of the public road as it then existed; that at the time of dedication and continuously thereafter the strip of land in controversy has remained inclosed; that the strip of property has been inclosed and held as a part of his property ever since that date; that no attempt had

been made by the city to oust him from the possession of the strip in controversy until the summer of 1918; that he used the front of his place, the strip in controversy, for a pasture; that January 10, 1910, he accepted a so-called contract from the town of Dermott, which is as follows:

"This contract, made and entered into by and between the incorporated town of Dermott and H. C. Stinson, witnesseth:

"Whereas, the said H. C. Stinson has caused to be constructed along the west boundary line of that part of the common lying in front and west of lots 3 and 4 in block 4 in the original town of Dermott, owned by him, concrete sidewalk and has paid for the same.

"The said town of Dermott hereby agrees to and with the said H. C. Stinson that in the event the said H. C. Stinson should ever be divested of that part of the said common lying west of said lot by any act or consent of said town, then in that event it will repay to said H. C. Stinson any and all sums of money expended in the construction of sidewalk, without interest.

"And the said H. C. Stinson hereby agrees on his part that he will maintain said sidewalk and a reasonably good looking fence along said western boundary of said common where same is situated in front or west of his lots 3 and 4 in block 4."

Appellee testified with reference to this contract that when he signed the agreement about the sidewalk he did not recognize the town's right to the property; that he knew the town claimed it and he claimed it; that he took the money back as a condition of his surrender of the contract; that he thought as long as the town had used his money six or seven years he might use the money himself; that he received notice from the town to move his fence back but did not remember whether it was before or after he accepted the money; that he did not move the fence when he accepted the money or when he received notice to move same; that he got out the injunction because he did not intend to give it up; that the

north end of the common is occupied by a brick building and so far as he can tell is standing where the original building stood in 1882 and 1883; that no portion of the common has been open to the public since 1883 and the city has not since that time until the matter of the side-walks came up in 1910 sought to eject any of the owners from the strip of land dedicated as the common.

R. A. Buckner testified that he came to Dermott in 1884, and that at that time the common was occupied out to the street, and he knew nothing of its existence for several years; that the appellee and other owners of lots abutting the strip in controversy were then and have since been in possession of same; that it was inclosed and had been occupied since 1884; that appellee claimed the common as his property; that he had never heard the title or right to possession of the common called in question until five or six years ago when witness was employed as town attorney; at that time some of the council wished to take it, others did not; at that time appellee claimed the common abutting his lots as his own and witness believed other property owners did likewise; that at the time the question of building the sidewalks was up before the council appellee claimed the property and talked to witness about making defense if the city ever attempted to assert title to the property. Different individuals, among them members of the city council, had talked about whether they ought to take possession of the common or not, but there was never any action taken by the council.

Other witnesses testified substantially corroborating the testimony of the above witnesses. One of the witnesses stated that so far as he knew no owner of property in that plat had ever recognized the right of the public in that land; that he had known the property since 1900; that when the town required the property owners, along the strip in controversy, to put down sidewalks there was a question raised at the time as to the right of the town to require that sidewalks be put down. Witness asked whether if the property owners should put it down

themselves if they could put it back on the line. The city authorities assured witness that there was no danger of the property owners losing their property, but for their protection the city would give them a ninety-nine-year lease. The town did not claim the title to the land when it offered them the ninety-nine-year lease. Witness only wanted it to settle any dispute that there might be as to the title.

Witness J. T. Crenshaw testified for the appellants that he had been a resident of Dermott since 1881; that he had been connected with the city government at various times as alderman, mayor and recorder since it was incorporated. The strip in controversy was dedicated to the hamlet of Dermott by Major Duke, who wanted to put out trees on it. Dermott was a small place then and no one took any interest in it. While witness was a member of the council and had charge of the city business "the common was recognized as belonging to the town, but the people along there recognized it as belonging to them." There were two opinions about it.

Witness did not know that the property owners claimed the common as their own. The people there had fenced it and lived there and were using it. The common was always recognized as city property. Witness could not say whether the owners of the lots abutting the common ever recognized it as city property or not. They recognized it as their own property and had it fenced in. There has always been a dispute about it. The city took active steps last year toward the assertion of its rights when they made one Belser move his house up when they found it to be on the parkway. Witness could think of no other assertion of right by the city.

Other witnesses, some of them owners of lots abutting the common, testified that they did not claim the common and that in conversation with other abutting owners the right of the city to the common was recognized.

Witness Rayborn had lived in Dermott since 1880, during which time he had held all of the offices of the

city except treasurer. During his administration there were so many discussions concerning the common that he could not name any certain time only when the side-walk was built; that while he was in office the town authorities were never notified that any of the owners of property abutting the common claimed the property in front of their lots as their own, but they all recognized that the town owned it; that he was mayor a long time, the last time in 1913; that in 1918 the appellee said to witness, ''This is where Delaney run the line between our property and the city property. He run it a little too close to my house, a little over the line, because the line is where the cedar trees are in front of where Petticord used to live, because Petticord set those cedar trees on the line.''

Witness further testified that the abutting owners all had good fences on their lines and did not present claim to any of the city property until after the death of Duke; that while witness was connected with the council there was no action taken by the city to open the common ''because there was an agreement for the people to move when they were dissatisfied and wanted the common opened.''

W. D. Trotter testified that he had lived in the community since 1874; that the common since the city was incorporated had been generally regarded as public property; that he had never heard of a controversy about the property until the one came up with Belser; that that part of the common had been inclosed all the time witness had resided in Dermott.

The above are substantially the facts upon which the trial court found that the appellee had been in open, continuous and adverse possession for more than thirty-five years of the strip of land designated as the common, that appellee was not estopped from setting up title by limitation, and that he had acquired title to the property.

The court thereupon entered a decree perpetually enjoining the appellants from interfering with the appellee's possession. From that decree is this appeal.

The undisputed testimony shows that in 1882 S. A. Duke, the original owner of the land in controversy, owned a farm in Chicot County, Arkansas; that he platted a part of the same into blocks and lots with streets and alleys and a strip of land designated as the public common, of which the land in controversy is a part; that he designated the lands thus platted as the hamlet of Dermott; that on March 25, 1882, he sold lots 3 and 4, block 4, of the hamlet of Dermott to the appellee. Of the lands thus platted he had sold other lots to A. E. Petticord and C. P. Freeman. On March 30, 1882, all of the then property owners of the lands which had been platted by Duke as the hamlet of Dermott signed the instrument set out in the statement, dedicating the streets, alleys and common to the public of the hamlet of Dermott. That instrument recites that the common thus donated by Duke should never be "occupied, inclosed or used for any other purpose except by the unanimous consent of every owner of real estate in the said hamlet."

The appellee testified that a very short time after the plat was made and the instrument above mentioned was signed by him, the then owners of the property agreed among themselves to abrogate that contract and continue their fences out to the boundary of the public road as it then existed. He states that the parties interested at that time agreed to take what was designated as the common into their lots and hold them as a part of their property. All the other original signers of the instrument are dead. This testimony of the appellee is undisputed.

The testimony of the appellee is positive to the effect that there had never been a time since he took possession of the strip of land that it had not been inclosed and held by him as a part of his property. The evidence is undisputed that the possession of the strip known as the common was taken and held by the owners of the abutting lots, and a preponderance of the evidence shows that these abutting property owners were holding the common adversely to the city of Dermott. All except one of

the owners of lots abutting the strip designated as the common testified corroborating the testimony of the appellee, that they went into the possession and were holding as their own, and adversely to the city, the part of the strip abutting their lots, and the width of each lot to the public road which is now Main street of the city of Dermott.

The testimony of the appellee that the strip designated as the common was held adversely by the abutting lot owners is corroborated by witnesses who, it occurs to us, were in the best situation to know the facts and who gave the most direct and specific testimony concerning the adverse claim. For instance, J. T. Crenshaw, one of the oldest residents of the town and who had been officially connected with the city government ever since it became an incorporated town, testified that "the common was recognized as belonging to the town but the people along there recognized it as belonging to them." His testimony thus shows that so far as the city was concerned it claimed the property as its own, but so far as the property owners were concerned they were claiming it as their own property.

Likewise, the testimony of Rayborn, who was an old resident and had held all the offices of the city except treasurer, shows that there had been discussions concerning the common in the city council so many times during his administration that he could not name any certain time.

The testimony of these witnesses proves clearly that so far as the city was concerned it did not recognize that the abutting property owners had any title to the common, but it also as clearly shows that the matter was in dispute. It clearly shows that the city fathers must have known the circumstances and have known that the abutting lots owners were holding and claiming to own the property, and yet took no steps to oust them from possession, and to open the common to the public until notice was served upon them in 1918 to remove their fences.

The testimony shows that the so-called common was not inclosed by the property owners by one common fence, but that each had the part claimed by him in a separate inclosure extending his lot its entire width to Main street of the city of Dermott. The character of these inclosures and holdings was such as to give notice to the members of the city council that the owners of abutting lots were claiming the strip designated as the common adversely.

The instrument of January 10, 1910, between the appellee and the city, designated as a "contract," concerning the building of sidewalks is not, as we construe it, a recognition by the appellee of title in the city of Dermott to the land in controversy. On the contrary, this instrument appears to us to be rather a recognition by the city of Dermott that the appellee was the owner and had a right to the possession of the property.

We conclude, therefore, that appellee's occupancy of the land from 1883 to 1918, when he was given notice to remove his fence, was of such a character as to be entirely inconsistent with the idea of mere permissible possession by the city of Dermott. A preponderance of the evidence, on the contrary, shows that it was adverse, open and continuous for the statutory period and that he, therefore, acquired title by adverse possession. *Gee* v. *Hatley,* 114 Ark. 384. The trial court was correct in so holding.

We are also convinced that, after having acquired such title, appellee was not estopped by accepting from the city of Dermott the amount that had been expended in the construction of the sidewalk and surrendering the contract concerning same. If we are correct in our view that appellee had acquired title by adverse possession, then appellee's contract with Dermott concerning the sidewalk would not operate to divest him of the title and invest title in the city. Such was not the purport, nor the effect, of that "*contract.*" *Hudson* v. *Stillwell,* 80 Ark. 575-8; see also *Broad* v. *Batty,* 73 Ark. 110; *Shirey*

v. *Whitlow,* 80 Ark. 444; *Turquette* v. *McMurain,* 110
Ark. 197; *Hutt* v. *Smith,* 118 Ark. 10.

The decree is correct. Affirmed.