GRADY *v.* DIERKS LUMBER & COAL COMPANY.

Opinion delivered June 20, 1921.

1. FRAUDS, STATUTE OF—PROMISE TO PAY ANOTHER'S DEBT.—In determining whether a particular undertaking to pay for goods furnished to a third person is original or collateral, the intention of the parties at the time it was made must be regarded, and in determining such intention the words of the promise, the situation of the parties, and all the circumstances attending the transaction should be taken into account, the purpose of the inquiry being to determine to whom the credit was originally given.

2. FRAUDS, STATUTE OF — PROMISE TO PAY ANOTHER'S DEBT — JURY QUESTION.—Whether an oral promise to pay for supplies to be furnished to a third person was an original or collateral promise *held* a question for the jury.

Appeal from Sevier Circuit Court; *James S. Steel,* Judge; reversed.

*Johnson & Shaver,* for appellant.

The court erred in directing a verdict for defendant. A verdict should not be directed except in cases where, conceding the credibility of the witnesses and giving full credence and full effect to every legitimate inference that may be deduced therefrom, it is plain and certain that plaintiff has made out a case sufficient in law to entitle him to recover. 118 Ark. 432; 107 *Id.* 158.

There was a question for a jury as to whether the credit was originally extended to appellee and was an original undertaking, and it should have been submitted to a jury under proper instructions. Plaintiff's recovery was not precluded by the statute of frauds. C. & M. Digest, § 4862. The intention of the parties governs, and this does not altogether depend upon the expression used but largely upon the situation of the parties. 25 R. C. L., §§ 65-72. See also 20 Cyc., § 5, p. 163; 141 U. S. Reporter 479; 50 N. E. Rep. 529; 87 Ill. App. 409. The promise here was an original undertaking, and not within the statute of frauds. 5 Ky. 63; 16 Ky. L. Rep. 447; 35 Mass. 369. The credit was given to the one promising and not to the one receiving the goods. 19 N. W. 130 It was an

original undertaking and not a collateral one. 75 N. D. 901; 72 Pac. 367; 13 Pa. Superior Ct. Rep. 77; *Speers* v. *Knarr,* Pa. Sup. Ct. Rep. 80, Pa. Sup. Ct. Rep. 581. It was not a promise to answer for the debt of another. 69 N. W. 1004; 215 S. W. 590; 40 Ark. 429; 76 *Id.* 292; 93*Id.* 277. See also cases cited. 31 Ark. 613; 12 *Id.* 174; 45 *Id.* 67; 76 Ark. 292.

There is no better way to interpret the meaning of a contract than by the acts of the parties under it. 46 Ark. 529; 52 *Id.* 65; 55 *Id.* 414; 78 *Id.* 202; 78 *Id.* 418; 80 *Id.* 542; 91 *Id.* 350.

The question should have been submitted to a jury under proper instructions as to the statute of frauds.

*Lake & Lake* and *Abe Collins,* for appellee.

The court properly directed a verdict for defendant. The oral undertaking to stand for the account is within the statute of frauds and could not be enforced and there was nothing to submit to a jury. 12 Ark. 174.

The promise was collateral in form, and the credit was extended to the parties to whom the goods were delivered. The judgment is sustained by the authorities. 141 U. S. 479; 60 W. Va. 320; 70 *Id.* 475; 102 Ark. 435, etc. Holcomb's statement that he extended the credit to the men is conclusive of this case. 31 Ark. 613; 88 *Id.* 594; 12 *Id.* 174; 153 Mich. 361; 116 N. W. 1090; 67 Wash. 264. Under the law and the evidence, the judgment is clearly right.

SMITH, J. Appellant is the successor in business of the firm of Holcomb & Grady, a copartnership, and brought this suit to recover a sum alleged to be due by appellee. Appellee is a corporation, and had given its employees, Sanders and Cheshire, a contract to get out logs by the thousand, and later made a similar contract with one McWhorter. It became necessary for these men who were to do the logging to have advances of goods, wares and merchandise, and such advances were made by Holcomb & Grady.

At the conclusion of all the testimony the court gave the jury the following peremptory instruction: "Gen-

tlemen of the jury: Under the law, as the court sees it, there is no question to go before the jury in this case. We have a statute in our State, enacted by our Legislature, almost at the beginning of statehood, requiring that what we call a collateral undertaking shall be evidenced by writing, or where any one contracts to stand for the debt of another, it must be in writing; and under that law there is nothing to go to the jury, because there is no question here; no writing was signed up by any one at all, and in cases of that kind the statute says a contract made to stand for a debt, default or miscarriage of another must be signed in writing, and unless this is done it is void.''

It is apparent that the instruction is a correct declaration of the law; but it is very earnestly insisted that the court erred in holding that there was no question of fact for the jury; and we have concluded that appellant is right in this insistence.

Inasmuch as the verdict was directed against appellant, we must give to the testimony that view of it most favorable to him, and if the testimony and all reasonable inferences deducible therefrom, thus viewed, have made a case for the jury, the judgment must be reversed.

There is some conflict in the testimony as to how the accounts were carried on the books of Holcomb & Grady, and it is admitted that the accounts were paid only on the approval of the person to whom the goods furnished had been charged. Appellee insists that these circumstances are important for their bearing on the proposition that both Holcomb & Grady expected nothing more from the appellee than to see that the accounts were paid in so far as what the men earned could pay them, and that any balance remaining after crediting the account of each man with what he had received on each pay day was carried, not by appellee, but by the firm of Holcomb & Grady.

Grady, who kept the books, testified that the accounts were kept in the name of appellee by the particular person who bought the goods. But, as appellee con-

tends, these book charges of appellant stand on no higher footing than the form of the promise or the situation of the parties.

It must be confessed that there are isolated statements of both Holcomb and Grady which, standing alone, appear to indicate that the credit was extended to the men themselves, and it was induced solely by the promise of McCurry, appellee's superintendent and agent, to stand for the accounts.

Grady, in his redirect examination, was asked these questions:

"Q. In response to a question by Mr. Lake (counsel for appellee) yesterday, you stated that the Dierks people (appellee) were standing for this account. What did you mean by that phrase?"

"A. Mr. McCurry told us to charge it to the Dierks Land & Coal Company, and that they would see that these accounts were paid.

"Q. Did they say they would see that they were paid or would pay them?

"A. That they would pay these accounts."

The negotiation for the opening of these accounts was conducted between McCurry and Holcomb, who stated that the contract under which the goods were furnished was as follows: "He (McCurry) called me up and said it was Mr. McCurry, with the Dierks people, and that he would have a couple of men down to go logging down at the Reunion grounds, and he would like for us to make arrangements to furnish them, and I told him we would be glad to have the business, and he told me who the two men were, and in a few days the men came down and went to logging and went to trading with us. Q. What did he say about the way for you to carry these accounts? A. He said for us to charge them to Mr. Sanders and Mr. Cheshire, and send the bills to them at Dierks, and the Dierks people would send us a check for the money."

At that time the witness Holcomb, with whom McCurry was conversing over the phone, did not know, and

had never seen, the men to whom the goods were to be furnished.

In detailing the contract made with McCurry, Grady testified: "He told us to furnish these men and make out a statement on the fifteenth and first of each month, and send it in to the Dierks Lumber & Coal Company, and they would pay these bills." And, further, that "Mr. Sanders started trading with us about the last of August, and traded with us until he left the country, and they kept paying his accounts off every time we would send in a statement."

There is an almost unlimited number of cases dealing with the question of whether a particular undertaking to pay for goods furnished to a third person is original or collateral. There is an extended case note to the case of *Mankin* v. *Jones,* 60 S. E. 248, 15 L. R. A. (N. S.) 214. A great many cases are collected and cited in this note. But it is unnecessary to review the authorities on this subject, as the law is well settled by the decisions of our own court. In the case of *Millsaps* v. *Nixon,* 102 Ark. 435, the court said that, in determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded, and in determining such intention the words of the promise, the situation of the parties, and all the circumstances attending the transaction, should be taken into account, the purpose of the inquiry being to determine to whom the credit was originally given. And when that has been done in the instant case, we think there was a question for the jury as to whether or not the credit had not been originally extended to appellee, and that question should have been submitted to the jury.

In announcing this conclusion we have, of course, taken into account only that testimony which tends to support that contention, and have not considered any question of probability or of preponderance of the testimony, as these are properly questions for the jury.

For the error in directing a verdict the judgment of the court below must be reversed and the cause remanded for a new trial.