GOLDSMITH v. FIRST NATIONAL BANK OF ASHDOWN.

Opinion delivered December 21, 1925.

1. LIMITATION OF ACTIONS—OPEN ACCOUNT.—An action on a verbal guaranty of an open account for cotton advances, brought more than three years after the last item of the account, is barred by the statute of limitation of three years (Crawford & Moses' Dig., § 6950).

2. LIMITATION OF ACTIONS—ESTOPPEL.—A defendant is not estopped to plead the statute of limitations unless it can be fairly said that he is responsible for deceiving the plaintiff and inducing him to postpone action upon some reasonably well-grounded belief that his claim will be adjusted if he does not sue, or that defendant will not avail himself of the statute of limitations.

3. FRAUDS, STATUTE OF—ESTOPPEL.—A person is not estopped from pleading the statute of frauds by his conduct in failing to pay the debt of another which he has verbally promised to pay and is able to pay, when by his failure to pay no fraud in law has been perpetrated upon the party to whom the promise is made resulting in the latter's injury.

Appeal from Little River Circuit Court; *B. E. Isbell,* Judge; reversed.

*A. D. DuLaney* and *James D. Head,* for appellant.

*Shaver, Shaver & Williams,* for appellee.

WOOD, J.   This is an action by the First National Bank of Ashdown, hereafter called appellee, against A. Goldsmith, hereafter called appellant.   The appellee alleged that the appellant was a stockholder and member of its board of directors and vice-president of appellee, and was also, during the cotton season 1919 and 1920, engaged in the cotton business; that during that season the appellee handled cotton accounts, paying to the buyers of cotton money on their acceptances and taking the warehouse receipts therefor, and charging the amounts to their respective accounts; that Julius Winters was the nephew of the appellant, and also engaged in the cotton business during that season; that Winters was acting for the appellant, and appellant was interested with him in the cotton business and controlled and distributed all the cotton that Winters bought; that appellant, at the beginning of the cotton season, represented to the directors of the appellee that Winters was his nephew and requested the appellee to carry his account during the cotton season of 1920, assuring the board that, if appellee would do so, appellant would give his personal supervision to said account and be responsible therefor; that, acting upon the appellant's oral representations and statements, the appellee, during the cotton season of 1919 and 1920, furnished Winters a large sum of money to buy cotton; that during December, 1919, Winters sold all the cotton he then had on hand, and paid the advancements made by appellee to that date, and he then desired additional advancements on cotton, but the appellee's cashier decided it was unsafe to continue advancing to Winters without more security than the cotton purchased, and took the matter up with the appellant.   Whereupon the appellant informed the cashier that Winters' account was all right, and asked the cashier to continue to advance to Winters, saying that the appellee was safe, as the account of

Winters was the same as appellant's own; that, with this assurance, appellee continued to make advances to Winters, and caused the appellant to make to appellee's board of directors a statement to the effect that he (appellant) would be personally liable for any advances made to Winters, and that Winters' account would be the same, as his own; that during the cotton season appellant himself purchased considerable cotton which was handled by him in the same manner as that of Winters, and appellant obtained large advancements upon cotton purchased by Winters from cotton brokers in Memphis; that the price of cotton declined, and when the cotton purchased by Winters was disposed of in October, 1920, he was owing to appellee a balance of $4,517.25, which remains unpaid, and Winters is wholly insolvent. It was alleged that the appellee would not have made the advances to Winters, had not the appellant personally guaranteed, as before mentioned, that he would pay Winters' account if any loss occurred; that appellee knew that Winters was insolvent, and the credit was extended solely upon the oral statements of the appellant. The appellee prayed judgment for the amount of the indebtedness and interest.

In his answer appellant denied specifically all the material allegations of the complaint, and alleged that the credit extended by the appellee to Winters was extended to him wholly on his own account. He averred that the alleged promises, if made, were oral and amounted merely to the promise by the appellant to pay the debt of Winters, and therefore the appellant pleaded the statute of frauds. Appellant also alleged that the cause of action was barred by the three-year statute of limitations.

The cause was tried by a jury, and, after hearing the evidence and instructions of the court, the jury returned a verdict in favor of the appellee in the sum of $4,517. Judgment was entered in favor of the appellee in that sum, from which judgment is this appeal.

1. The conclusion we have reached on the issue as to whether the appellee is barred from maintaining this action by the three-year statute of limitations makes it unnecessary to discuss the testimony and instructions of the court on the issues as to whether or not the amount claimed by the appellee was an original undertaking on the part of the appellant. For, conceding that the testimony was sufficient to sustain the verdict on that issue, and that there was no error in the court's charge submitting it, nevertheless we are convinced that appellee's right of action against appellant as for an original undertaking is barred by the three-year statute of limitations. Section 6950, C. & M. Digest.

This action was instituted on October 3, 1923. Treating the account in controversy as an original undertaking of the appellant, the testimony of the cashier of the appellee at the time the account accrued shows that the account stood on the books of the appellee in the name of Julius Winters, and that the last cotton acceptance was paid by the appellee for him on February 28, 1920. The cotton acceptances by the appellee for Julius Winters were all acceptances on demand. Therefore, if this account was an original undertaking of the appellant, he was due the appellee the amount thereof on February 28, 1920. As this was an open account, payable on demand, the statute of limitations began to run on that day in favor of the appellant against the appellee. The balance due appellee on cotton acceptances, as shown by the account of Winters on appellee's books, was $4,288.53, and for this sum Winters executed his note on October 18, 1920. There was a renewal of this first note in the sum of $4,000 executed by Winters to appellee June 18, 1921, and another note in the sum of $517.25 executed by Winters to appellee on June 22, 1921. The cashier of appellee testified that these notes were obtained at the request of appellant and of all the board of directors of the appellee. The witness testified that he made every effort in the world to get Winters to secure the original

note and the renewal thereof for appellant's protection. Witness wrote letters to Winters at the instance of the appellant, and the appellant wrote letters himself to Winters urging a settlement of the account.

There was testimony to the effect that, at a meeting of the board of directors of the appellee as late as December 20 or 22, 1919, the board was going over the cotton accounts of the appellee, and some of these accounts were being severely criticised, the appellant making the principal criticisms. It was suggested by one of the members of the board that all individuals having accounts had property back of them except Julius Winters, and that he had no property. Whereupon, the appellant said, "Do not bother about that; I am looking after that; it is just the same as mine." That was said concerning the Julius Winters account with the appellee at that time, and after that the appellee continued to make advances to Winters on his cotton account.

Allan Winham, the president of the appellee, testified that he attended the annual meeting of appellee's board of directors on January 10, 1920, and again about February 10, 1920. The appellant had called on him about the first of 1920 or the latter part of 1919, and had explained the status of the cotton accounts of the appellee. When the witness went over to Ashdown about January 10, he and the appellant discussed the cotton accounts of the appellee, and witness insisted that deeds of trust be made securing these accounts by various individuals who had property, and they were so made. Witness asked the appellant about the property of Julius Winters, and appellant stated that Winters had no property at that time, but that he (appellant) was looking after that account, and that witness need not worry about that—that it would be taken care of, and the appellee would not take any losses on it. Witness felt that the account was safe because appellant was solvent. After that at the meetings of the board this account was discussed, and appellant stated that he was doing all he

could to get Winters to pay it; that he had written Winters letters urging him to pay it. Witness had conversations with appellant at practically every meeting of the board until appellant went off of the board as to the best means of securing payment of this account. Appellant was present at these meetings, and seemed to be much embarrassed when the account was discussed. In 1923, just before Christmas, in a conversation with witness, appellant stated that he did not owe the account. Until that time he had never disavowed the account until he was sued, but in this conversation just before Christmas, 1923, he said that he didn't have any account; that it was Julius Winters' business; that it was not appellant's debt. The witness stated the matter was delayed because appellant was the richest man on the board of directors, and was its vice-president, and had been with the appellee a long time. The country was passing through the period of 1920, and the directors did not feel like they should have a family row, and they wanted to work the account out of Julius Winters. The appellant was making an effort to get Winters to pay the account, and witness desired to give him time to do that. The appellee did not bring suit until Winters went into bankruptcy.

The testimony of Winters was to the effect that the appellant went after him hard about this matter, and tried to get him to execute notes. Appellant was vice-president of the appellee, and told witness that it was embarrassing to him for the notes not to be paid. Appellant was witness' uncle.

Now, conceding that the account in controversy was the debt of appellant as an original undertaking on his part to pay the appellee, the statute of limitations began to run in appellant's favor, as we have seen, on February 28, 1920, when the last cotton acceptance was paid by the appellee for Winters. Giving the above testimony its strongest probative force in favor of the appellee, it does not tend to prove any facts sufficient to toll the statute of limitations. The most that the testimony tends

to prove is that the appellant would take care of Winters' account; that he would use his best efforts to have Winters pay the same, and to urge Winters to sign and renew notes for the amount of the account. The testimony tends to prove that the appellant did all this, but there is not a particle of testimony tending to prove that after February 28, 1920, the appellant said or did anything calculated to cause the appellee to believe that the appellant acknowledged the indebtedness as his own, and that, if appellee would not institute action thereon, the appellant would pay the same. There was not even a verbal promise upon the part of the appellant after February 28, 1920, to pay the account, much less any written acknowledgment that the debt was his, and a written promise to pay the same. Nor does the testimony justify the inference that, after the statute of limitations began to run, and before the statute bar attached, the acts and declarations of the appellant were calculated to mislead the appellee into the belief that appellant would pay the debt for Winters, if he did not, and that by reason of such conduct on the part of the appellant, appellee delayed action against the appellant until after the three years from the time the debt was due.

Section 6965, C. & M. Digest, (Revised Statutes, c. 91, § 14), provides that "no verbal promise or acknowledgment shall be deemed sufficient in any action founded on simple contract whereby to take any case out of the operation of this act, or deprive the party of the benefits thereof." Unless estopped by his conduct, the appellant has the right to invoke, and is entitled to, the benefit of this statute. In *Klass* v. *Detroit,* 129 Mich. 35, it is held that a defendant is not estopped to plead the statute of limitations unless it can be fairly said that he is responsible for deceiving the plaintiff, and inducing him to postpone action upon some reasonably well grounded belief that his claim will be adjusted if he does not sue." Mr. Freeman, in 95 Am. St. at p. 411, in an exhaustive note to above case, in which a great array of authorities is

collated, states: "Notwithstanding some conflict in the authorities, the great weight of legal adjudication and the universal trend of modern cases firmly establish the rule that an agreement or promise, whether oral or written, by the debtor not to plead the statute of limitations, made before the expiration of the statutory period, and relied upon by the creditor, until after the statutory period has expired, operates as an estoppel *in pais* as against the debtor, and precludes him from interposing the defense of the statute to defeat the action." * * * "The rule," continues Mr. Freeman, "is thus well stated in 1 Wood's Limitations of Actions, 2d. ed., § 76, as follows: 'While a promise not to plead the statute, whether made before or after the debt is barred, does not amount to an acknowledgment thereof or a promise to pay it, yet, if made before the debt is barred, and in consideration of forbearance to sue, and the creditor does forbear to sue upon the faith of the promise, it is binding upon the debtor, and at least has the effect to keep the debt on foot until the statutory period, dating from such promise, expires, either by way of estoppel, or as a conditional promise to pay the debt in case the plaintiff proves it.' "

. This court in *Baker-Matthews Mfg. Co.* v. *Grayling Lbr. Co.*, 134 Ark. 351, at page 355, stated the rule by quoting from 17 R. C. L. p. 84, as follows: "A debtor has frequently been held to be estopped from relying on the statute as a defense where, by acts of a fraudulent character, he has misled the creditor and induced him to refrain from bringing suit within the statutory period. And if a defendant intentionally or negligently misleads a plaintiff by his misrepresentations, and causes him to delay suing until the statutory bar has fallen, the defendant will be estopped from pleading the statute of limitations. And the prevailing view seems to be that the doctrine of estoppel applies where the creditor, before the debt is barred, is lulled into security by the oral promises of the debtor that he will not avail himself of the statute of limitations, and suit is delayed by reason thereof. It is

not necessary that the debtor should intend to mislead, but, if his declarations are such as are calculated to mislead the creditor, who acts upon them in good faith, an estoppel will be created.''

Applying this doctrine to the facts disclosed by this record, we find that there was no express promise upon the part of the appellant to the appellee not to avail himself of the statute of limitations if the appellee delayed the action beyond that period, nor was there anything in appellant's conduct calculated to induce the appellee to believe that the appellant would settle appellee's claim, as his own debt, if the appellee refrained from instituting the action, and tending to prove that the failure of the appellee to bring the suit within the statutory period was bottomed upon acts or declarations of the appellant to the effect that the debt was his own, and that he would see to its payment. To sustain their contention that the appellant is estopped from claiming the benefits of the statute of limitations, counsel for appellee rely upon a quotation from 17 R. C. L. p. 929 and the cases of *Bank* v. *Parrott,* 125 Cal. 472; 58 Pac. 164; 73 A. S. R. 64, and note, and also *Mudd* v. *Harper,* 1 Md. 110, 54 Am. Dec. 664. We have examined these authorities, and find that they are all differentiated on the facts from the case at bar, and it would unduly extend this opinion to comment upon them. We conclude, therefore, that, under the facts of this record, the appellee's claim, treated as an original undertaking of the appellant, is barred by the statute of limitations.

2. Learned counsel for the appellee contend that, even though the claim in controversy be not the original debt of appellant, nevertheless the appellant is estopped by his conduct from denying liability for such claim and of availing himself of the plea of the statute of frauds. Section 4862, C. & M. Digest, provides in part as follows: "No action shall be brought to charge any person upon any special promise to answer for the debt, default or miscarriage of another, unless the agreement, promise or

contract upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized.''

The debt of Winters to the appellee was evidenced by a note signed by Winters. While there is testimony tending to prove that the appellant wrote letters to Winters urging him to pay the debt, and that letters were written by others at the instance of appellant urging Winters to sign the notes evidencing the indebtedness to the appellee, yet this testimony does not warrant the inference that the appellant authorized Winters to sign these notes in acknowledgment that the debt was the debt of appellant instead of Winters, or that it was their joint obligation. There was testimony in the record tending to prove that, after Winters had gone to the limit of his credit with the appellee on his cotton account, the appellant, who was then vice-president of appellee, stated to the cashier that Winters might want to buy more cotton, and to let him have the money; that it would be all right to continue the advances to Winters; that his account was just the same as appellant's, and that appellant was looking after it. After this statement made by appellant to the cashier of appellee and its board of directors, the appellee did make the advances to Winters, which are the subject-matter of this action.

The above testimony is exceedingly pertinent and cogent, tending to prove that the advances made to Winters by the appellee were at the instance and request of the appellant, and that it was an original undertaking on the part of the appellant to pay the same, and justified a verdict to that effect, as we have already stated. But there was testimony also tending to prove, and to justify a finding to the effect, that the debt to appellee was the debt and original undertaking of Winters, and not that of appellant. Therefore, to test the issue as to whether or not appellant's plea of the statute of frauds was well

taken, we must treat the debt as that of Winters. Giving the above testimony its strongest probative force in favor of the appellee on the issue of the statute of frauds, it only tends to prove that there was a verbal promise on the part of the appellant to pay appellee the debt of Winters. The appellant is the uncle of Winters; the testimony shows that he is abundantly able to pay Winters' debt to the appellee; he was a trusted officer of the appellee, its vice-president, and a member of its board of directors, and had intimate and close business relations with them. It was doubtless because of this situation and of the confidence appellee's board of directors, *and especially its president,* had that appellant would fulfill his promise, that caused them not to exact of him a written obligation or promise to pay the debt of Winters. However reprehensible in morals appellant's conduct may have been under the circumstances, nevertheless it cannot be said that he perpetrated any fraud in law upon the appellee in not making a written promise to pay the debt of Winters. In the eyes of the law appellee's board of directors had knowledge of the statute of frauds, as well as the appellant. If it had been proved by the appellee that the appellant had derived a personal financial benefit by reason of his promise to pay Winters' debt, then there would be some plausibility in the contention of counsel for appellee that appellant was estopped by his conduct from repudiating such promise. But it occurs to us, in the absence of proof of fraud on the part of the appellant resulting in direct financial benefit to appellant and consequent loss to the appellee, the appellant is not estopped from claiming the benefit of the statute of frauds. A person is not estopped from pleading the statute of frauds by his conduct in failing to pay the debt of another which he has verbally promised to pay, and is able to pay, when by his failure to pay no fraud in law has been perpetrated upon the party to whom the promise is made resulting in injury to such party. Not to so hold would be in the teeth of the statute of frauds and a nullification of such statute by judicial interpretation.

We have examined the cases cited from our own court, and relied upon by appellee's counsel in support of their contention that appellant is estopped by his conduct from claiming the benefit of the statute of frauds, and these cases are differentiated by the facts from the case at bar.

We therefore conclude that, treating the appellee's claim as the debt of Winters, appellant's plea of the statute of frauds under the evidence presents a complete defense, because there was no proof that appellant promised in writing to pay such claim. So, whether the undertaking be original or collateral, appellee, it appears from the undisputed facts, is cast on either horn of the dilemma. Therefore the trial court erred in not granting appellant's prayer for peremptory instruction in his favor.

The judgment of the circuit court is therefore reversed, and, inasmuch as the cause seems to have been fully developed, judgment will be entered here in favor of the appellant.

Mr. Justice HUMPHREYS dissented.