ELM SPRINGS STATE BANK *v.* BRADLEY.

Opinion delivered April 29, 1929.

438

*Pearson & Pearson,* for appellant.

*W. A. Dickson* and *Price Dickson,* for appellee.

SMITH, J. The appellant bank sued the appellee Bradley upon a note executed to its order by Nannie and Claude Cowan, and in its amended complaint alleged the following facts as constituting its cause of action: The note sued on was a renewal note, and in making the original loan appellee "verbally stated that 'Nannie Cowan is my sister-in-law, and if the bank will make this

loan I will personally guarantee the repayment of same.'" It was further alleged: "That said bank, relying upon said statement of personal guaranty so made by the said W. J. Bradley, did make said loan to the said Nannie Cowan and Claude Cowan, in the sum of $437.50, on the 11th day of May, 1920, and would not have made said loan except for the personal guaranty aforesaid so made by the said W. J. Bradley."

After alleging several renewals of the note, upon some of which appellee paid the interest, it was further alleged: "That at and prior to each and every renewal of said note the said W. J. Bradley solicited the renewal of the same, and each time stated that, if the same should be renewed, he would remain bound upon his original guaranty, and guarantee the repayment of the same."

A demurrer to this amended complaint was filed, and overruled, whereupon appellee, reserving the demurrer, filed an answer, in which he denied that he had guaranteed the payment of the note, and set up the defense of the statute of frauds.

At the trial of the cause Mustain testified that he was and for twelve years had been the cashier of the bank, and that during this time appellee, who was the largest stockholder, had been a director and vice president. Appellee, who was vice president at the time the original loan was made, wanted the loan made Nannie and Claude Cowan to pay a note for $437.50 which they owed on a truck. Witness declined to make the loan until the board of directors of the bank had approved it, and, when the board met, Bradley put in an application for a loan to Mrs. Cowan, who, Bradley said, was his sister-in-law, and was reliable and responsible. Neither witness nor the president of the bank knew the Cowans, and the president stated that, as he did not know the Cowans, and they were not depositors of the bank, "he would absolutely refuse to make the loan, unless Mr. Bradley himself would guarantee the loan; so Mr. Bradley said he would absolutely guarantee the loan if the

bank would let Mrs. Cowan have the money. The loan was made upon the credit of Mr. Bradley absolutely. It was not made upon the credit of Mr. or Mrs. Cowan, and would not have been made except for Mr. Bradley's promise to pay it or see that it was paid.'' The note was renewed several times at the request of Mr. Bradley, who more than once paid the interest upon the renewal.

The cashier further testified that Bradley was present at the board meeting when it was decided to make the loan, and the minutes of this meeting were offered in evidence, it being therein recited: ''Application secured from W. J. Bradley for a loan to Nannie Cowan for $437.50. W. J. Bradley agrees to guarantee payment of said loan.'' The minutes were signed by the president and secretary.

The testimony of the president of the bank is substantially the same as that of the cashier.

The testimony of appellee is in irreconcilable conflict with that of the cashier and president of the bank, his testimony being to the effect that he presented an application for this loan, and recommended that it be made, but that he did not guarantee it. He called attention to the fact that he did not sign the minutes of the bank meeting, and stated that he did not know such minutes had been written up.

There was no question about the amount due on the note, this being, with the interest thereon, something over $500, yet the jury returned a verdict in favor of the bank for only $200. Judgment was rendered upon this verdict, and both parties prayed and were granted an appeal.

Appellant insists that judgment should have been rendered in its favor notwithstanding the verdict for the full amount of the note; whereas appellee insists that the judgment rendered should be reversed, and the cause remanded with directions to sustain his demurrer to the complaint.

Appellee's abstract of his motion for a new trial refers only to his demurrer, and we consider no other question, as it is not likely, if the complaint should be amended to conform to the requirements of this opinion, that another inconsistent verdict will be returned by the jury. If so, the case of *Fulbright* v. *Phipps*, 176 Ark. 356, 3 S. W. (2d) 40, defines the practice which the trial court should follow.

It has been several times held that the defense that an action sued on was barred by the statute of limitations cannot be raised by demurrer in an action at law, unless the complaint shows on its face that it is barred and also the non-existence of any ground of avoidance of the statute. *Central Clay Drainage Dist.* v. *Hunter*, 174 Ark. 293, 295 S. W. 19; *McCollum* v. *Neimeyer*, 142 Ark. 471, 219 S. W. 746; *Flanagan* v. *Ray*, 149 Ark. 411, 232 S. W. 600; *Brown* v. *Ark. Central Power Co.*, 174 Ark. 177, 294 S. W. 709.

The same rule—and for the same reason—applies to a demurrer raising the defense that the statute of frauds bars a recovery, as it has been held that a complaint which declares upon a contract which the statute requires to be in writing will be presumed to have been made in writing, or as required by the statute, and proof of a written contract will be necessary to sustain the allegations of the complaint. *Hurlburt* v. *W. & W. Mfg. Co.*, 38 Ark. 594; *Gale* v. *Harp*, 64 Ark. 462, 43 S. W. 144. If the defendant denies the existence of a contract, which, to be enforceable, must be in writing, but does not plead the statute of frauds, the plaintiff, to prove the existence of a valid contract, must prove one in writing. *Chicago Mill & Lbr. Co.* v. *Matthews*, 163 Ark. 571, 260 S. W. 963; *McCorkle* v. *H. K. Cochran Co.*, 144 Ark. 269, 222 S. W. 34; *Cook* v. *Cave*, 163 Ark. 407, 260 S. W. 49; *O'Bryan* v. *Zuber*, 168 Ark. 613, 271 S. W. 347; *Stooksberry* v. *Pigg*, 172 Ark. 765, 290 S. W. 355; *Allen* v. *Bank of Eureka Springs, ante*, p. 334.

Here the complaint alleges that the defendant agreed "if the bank will make this loan, I will personally guar-

antee the repayment of same," which is clearly an action to charge the defendant upon a "special promise to answer for the debt, default or miscarriage of another," within the meaning of the second paragraph of § 4862, C. & M. Digest, and the statute expressly provides that no such action shall be brought unless such promise, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized. Nor can there be any presumption here, under the cases above cited, that the contract, which, to be enforceable, must have been in writing, was in writing, for the complaint alleges that the promise was a verbal one. The demurrer should therefore have been sustained, as the complaint shows on its face that the action is barred by the statute of frauds, and shows also the non-existence of any ground to avoid the application of the statute.

It is true the complaint does allege that the bank "would not have made said loan except for the personal guaranty aforesaid so made by the said W. J. Bradley," but the truth of this allegation, which the demurrer admits, does not prevent the statute of frauds from applying.

In 27 C. J., chapter "Frauds, Statute of," page 143, it is said:

"There is some authority for the view that the promise is original and not within the statute, although the third person who received the benefit is also concurrently liable therefor, provided the credit was given solely to the promisor, and the promisee did not rely upon the liability of the third person. But the great weight of authority rejects this view, and holds that, if the third person is liable at all, the promise is collateral and must be in writing, unless there is a new consideration beneficial to the promisor, received under such circumstances that he thereby comes under an independent duty to pay without regard to the liability of any other person."

Among the many cases cited to support the majority view quoted is our own case of *Kurtz* v. *Adams,* 12 Ark. 174, which, since its rendition, has been cited and followed many times by this court. In reaffirming the Kurtz case in the case of *Chapline* v. *Atkinson,* 45 Ark. 67, 55 Am. Rep. 531, Mr. Justice EAKIN said: "However that may be, it has been the doctrine of this court for more than two-score years, without question or dissent. It is not *res nova.*"

In the case of *Grady* v. *Dierks Lumber & Coal Co.,* 154 Ark. 255, 242 S. W. 548, it was said: "If the undertaking was, in fact, a collateral one, the (to) answer for the default of the parties who purchased the goods, the fact that the promise was the 'sole and inducing cause' did not transform the contract into an original undertaking." See also *Mankin* v. *Jones,* 63 W. Va. 373, 15 L. R. A. (N. S.) 214; *Grady* v. *Dierks,* 149 Ark. 310, 232 S. W. 23; *Millsaps* v. *Nixon,* 102 Ark. 435, 144 S. W. 915; *Swoboda* v. *Throgmorton,* 88 Ark. 592, 115 S. W. 380; *Goldsmith* v. *First Natl. Bank,* 169 Ark. 1162, 278 S. W. 22.

For the reasons stated the complaint was demurrable; and we are also of the opinion that there was no testimony changing the character of the action alleged in the complaint, according to which testimony the complaint could be treated as being amended to conform thereto. The cause of action alleged, and that proved by the plaintiff's testimony, was the breach of a verbal contract of guaranty to pay another's debt, and that it was the debt of another—the Cowans—is shown by the fact that they signed the original note and each renewal thereof, and theirs were the only names appearing on the note.

The subsequent promise of appellee to pay the note if renewed was a mere renewal of the original promise, and was not made upon any consideration to him moving, and was as much within the statute as the original promise. *Ackley* v. *Parmenter,* 98 N. Y. 425, 50 Am. Dec. 693; *Patton* v. *Robbs,* 175 Ark. 784, 300 S. W. 388; *Zimmerman* v. *Hall,* 102 Ark. 407, 144 S. W. 222.

The minutes of the meeting of the board of directors of the bank were not a sufficient writing to comply with the statute of frauds, for the reason that they were neither written nor signed by appellee, the party sought to be charged. *Trustees of the Free Schools in the South Parish of Andover* v. *Flint,* 13 Metcalf (Mass.) 539; *Flint* v. *Pierce,* 99 Mass. 68, 96 Am. Dec. 691.

In the case of *Chicago Mill & Lbr. Co.* v. *Matthews, supra,* it was held that the party to be charged is the party to be charged in an action, and in the instant case that party is appellee, who neither wrote nor signed the minutes.

In the recent case of *Central Clay Drainage Dist.* v. *Hunter, supra,* it was held that the minute-book of the board of directors of an improvement district was a sufficient memorandum signed by the party to be charged to satisfy the statute of frauds; but there the record had been made by the party sought to be charged, which is not the case here.

The judgment of the court below will therefore be reversed, and the cause remanded with directions to sustain the demurrer to the complaint.