Earl M. Smith, Executor of the Will of Frank A. Anderson, Deceased, Plaintiff-Appellant, v. Doctors' Service Bureau, Inc., an Illinois Corporation, Harry M. Peterson, et al., Defendants-Appellees.

Gen. No. 49,205.

First District, Fourth Division.

May 13, 1964.

Rehearing denied June 1, 1964.

243

Raymond H. Groble, Jr., of Chicago, for appellant.

Paul Manning, of Chicago (Robert C. Cross and Gerald M. Chapman, of counsel), for appellees.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

This is an appeal from dismissal of a petition for a writ of mandamus to compel defendant corporation and its officers to transfer shares of its stock owned by a deceased shareholder to plaintiff as his executor and to issue the certificate therefor.

The decedent had been one of five doctors who were subscribing shareholders in a corporation formed to operate a collection agency business dealing primarily with delinquent medical accounts. The minutes of a special meeting of the board of directors on July 19, 1960, reflect that each of the five doctors had paid in $2,400; that each was "entitled" to 480 shares of stock; and that the secretary was "directed to prepare stock certificates to be issued to the respective holders." Due to a delay, possibly occasioned by a slight modification of the corporate name, the certificates had not yet been issued at the time of a regular meeting of the board on November 15, 1960, when, as again disclosed by the corporation's minute book, the board "directed that the stock certificates be issued."

Defense to the action rests primarily upon a purported stock reacquisition agreement among the original subscribers. This alleged agreement appears solely in the minutes of the directors' meeting of November 15, 1960. It is there stated that the decedent himself had expressed concern over the possible owner-

ship of shares by a widow upon the death of a shareholder, considering that such an eventuality would not be in the best interest of the corporation. A motion by one of the other subscribers was thereupon carried unanimously, the full text of which is as follows: "[I]t is the agreement of the stockholders that in the event a stockholder died, his stock would be purchased by the corporation at its book value and the widow or beneficiary of the stock would receive the proceeds."

Two weeks later plaintiff's decedent died. The defendants obtained a report from a certified public accountant in which the decedent's 20% ownership interest in the book value of the corporation, as at November 30, 1960, after provision for federal income tax and after provision for contribution to the profit sharing trust was stated to be $4,264.57. This amount was offered to plaintiff for his decedent's interest in the corporation, but was rejected by him and this litigation ensued.

 The initial question concerns the propriety of the remedy in view of the alleged reacquisition agreement. Defendants argue for the principle that mandamus will not lie where title to stock is in issue.[1]

---

[1] Both parties relay on Cohen v. Schlossberg, 17 Ill App2d 320, 150 NE2d 218 (1958). While some of the language in that opinion would appear to favor defendants' position in this case, we believe that the decision is not pertinent to the issues before us. It was held in that case that a prior decision in a mandamus case had not determined the question of title to the stock involved, and, therefore, was not a bar to subsequent stock title litigation on the principle of res judicata. The court recognized, however, that such an issue might, under some circumstances, be properly raised when it stated at page 329:

> [T]itle to the stock is not *necessarily* an issue in a mandamus suit to compel a corporation to issue a new certificate. Yet, if such an issue were presented and decided, it would be a bar to its retrial in another proceeding between the same parties. (Emphasis supplied.)

However, the historical purposes for this rule would seem to have been negatived or fulfilled so as to obviate the rule itself and preclude its application in the instant case.

A nineteenth-century authority, High, Extraordinary Legal Remedies, 3rd Ed, § 313 (1896), sets out one purpose of the rule as being based on the availability of another remedy, as follows:

> In conformity with the general principle that mandamus will not lie when other adequate and specific remedy may be had at law, the courts refuse to lend their interference by this extraordinary writ for the purpose of compelling the transfer to a purchaser of shares of capital stock upon the books of an incorporated company, or to compel a company to issue certificates of stock. In all such cases full and complete satisfaction, equivalent to specific relief, may be had by an ordinary action at law to recover the value of the stock, and the existence of such other remedy is a complete bar to the exercise of the jurisdiction by mandamus when it does not appear that the particular stock in question possesses any especial value over stock of the corporation.

In a footnote, High cites Shipley v. Mechanic's Bank, 10 Johns Rep 484 (1813), which makes the point forcefully:

> The applicants have an adequate remedy, by a special action on the case, to recover the value of the stock, if the bank has unduly refused to transfer it. There is no need of the extraordinary remedy by mandamus in so ordinary a case. It might as well be required in every case where trover would lie. It is not a matter of public concern, as in the case of public records and

documents; and there can not be any necessity, or even a desire, of possessing the identical shares in question. By recovering the market value of them, at the time of the demand, they can be replaced. This is not the case of a specific and favorite chattel, to which there might exist the pretium affectionis.

In the case before us it is nowhere suggested that plaintiff be limited to a suit for damages, perhaps because the stock could not be replaced, there being none available on the open market. But defendants do suggest that the executor be relegated to another remedy—citation proceedings in the probate court under Ill Rev Stats ch 3, §§ 183–187a. Without passing on the applicability of that statute, it should be pointed out that the Mandamus Act was amended in 1874 to provide: "The proceedings for a writ of mandamus shall not be dismissed nor the writ denied because the petitioner may have another specific legal remedy, where such writ will afford a proper and sufficient remedy; . . . ." Ill Rev Stats 1961, ch 87, § 9. See Carus v. Matthiessen, 196 Ill App 445, 449 (1915). We give no credit, therefore, to defendants' argument that mandamus is inappropriate because of the availability of another remedy.

Another historic reason for the impropriety of mandamus in a case relating to corporate stock was the danger to the corporation in making a mistake in issuing certificates since, under a general common law rule, the corporation was bound to protect all interested persons against illegal or unauthorized transfers of stock. See Campbell v. Morgan, 4 Ill App 100, 105 (1879). Accordingly, where a corporation was sued in mandamus to transfer stock on its books to an assignee-plaintiff, the writ was denied because plaintiff's right thereto was not clear in view of conflicting claims of ownership. The court, in People v. Elgin

247

Motor Car Corp., 209 Ill App 601, 605 (1918), concluded as follows:

[D]efendant was not obliged to act at its peril and determine the conflicting claims arising as to the ownership of the said stock, but under the circumstances was justified in refusing a transfer thereof.

The problem of a corporation's liability was partially alleviated by the so-called Simplification Act of 1957 dealing with transfers by fiduciaries. Ill Rev Stats ch 32, §§ 439.50–439.57.[2] But more pertinent to the instant case is the special circumstance that the corporation itself is the adverse claimant by virtue of the alleged stock reacquisition agreement. This distinction removes the case from the application of the traditional limitation, because we are faced with no prejudice to the rights of third parties or potential liability arising from corporate action. The issues and the adverse claimants are before the court, and the facts are not in dispute. Under these circumstances we see no reason why the case should not be determined.

That a legal dispute is present between plaintiff and defendant corporation does not defeat the "clear right" required for mandamus jurisdiction. As we said in People ex rel. Bourne v. Johnson, 48 Ill App2d

---

[2] Especially section 439.53 dealing with adverse claims, as follows:

If a person having or asserting a claim of beneficial interest adverse to the transfer of a security from a fiduciary delivers written notice of the claim to the corporation before the transfer, the corporation shall promptly notify the claimant by registered mail of the presentation of the security for transfer. The corporation shall withhold the transfer for 30 days after sending the notice and shall then make the transfer unless it is restrained by a court order.

248

307, 199 NE2d 68 (First Dist 1964): "the interposition of conflicting contentions of law cannot be permitted to becloud an otherwise clear right to a writ of mandamus."

■ The final issue, then, is the legal effect of the alleged reacquisition agreement. Plaintiff claims that it violates the Statute of Frauds which declares unenforceable a contract to sell choses in action unless a memorandum in writing of the contract be signed by the party to be charged. Ill Rev Stats 1961, ch 121½, § 4(1).[3]

It is undisputed that the minutes containing the alleged agreement were not signed by the decedent. And the applicability of the statute to a sale of stock is clear. Illinois-Indiana Fair Ass'n v. Phillips, 328 Ill 368, 374, 159 NE 815 (1928); accord, Cooper v. Pedersen, 29 Ill App2d 384, 388, 173 NE2d 549 (1961).

Defendants argue, however, that the alleged agreement need not stand on its own feet since it was entered into before the subscription had been executed by the issuance of certificates, and thus was but a modification of the original subscription agreement. They further claim that a subscription agreement is not a contract for the sale of a chose in action, citing Shadbolt & Boyd Iron Co. v. Long, 172 Wis 591, 179 NW 785 (1920), and that the entire subscription agreement as modified would, therefore, fall outside the statute.

---

This statute would appear to be applicable to the contemplated transfer from plaintiff to the beneficiary under his decedent's will.

[3] The pertinent part of this section reads:

A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action . . . unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

We need not pass on the applicability of the statute of frauds to a subscription agreement because we believe that the subscription agreement in this case could not save the defendants because it was already executed at the time of its supposed modification. Title to the stock passed when the subscription was paid. Illinois-Indiana Fair Ass'n v. Phillips, 328 Ill 368, 375, 159 NE 815 (1928); Federal Deposit Ins. Corp. v. Gunderson, 106 F2d 633, 635 (8th Cir 1939). As the minutes of July 19 correctly stated, the subscribers had paid for and were "entitled" to their shares. The certificates, when they would come into being, would then merely be evidence of that entitlement or ownership.

No validity is gained for the alleged reacquisition agreement because of its recording in the minutes of the meeting of the board of directors of the defendant corporation. While we have been referred to no Illinois cases dealing with this point, in Elm Springs State Bank v. Bradley, 179 Ark 437, 16 SW2d 585, 587 (1920), the court held the "minutes of the meeting of the board of directors of the bank were not a sufficient writing to comply with the statute of frauds, for the reason that they were neither written by nor signed by appellee, the party sought to be charged."

It should also be remembered that there is no evidence of the "agreement" other than as set forth in the directors' minutes. From this it appears that the corporation was not a party thereto in any way except by whatever may be the consequence of the fact that the directors' minutes are found in the corporate minute book. Construing the alleged agreement strictly, it is our conclusion that its presence in the minute book is of no consequence and that the corporation was, therefore, not a party to the alleged agreement. Vogel v. Melish, 46 Ill App2d 465, 196 NE2d 402 (1964). Without the corporation as a party, an agreement purporting to require the corporation to

purchase its shares in certain circumstances would be fatally deficient in any event.

We consider mandamus to be a proper remedy in this case. The facts are not in dispute, and we conclude that the alleged reacquisition agreement is unenforceable against the plaintiff. The writ should, therefore, issue. Accordingly, the dismissal of the petition is reversed, and the cause remanded with directions to issue a writ of mandamus for the transfer of the shares owned by plaintiff's decedent to the plaintiff as his executor and for the issuance to him of the corporation's certificate evidencing such shares.

Reversed and remanded with directions.

DRUCKER and McCORMICK, JJ., concur.