DOROTHY MOORE *v.* J. F. LAWRENCE ET UX

5-5881                                    480 S.W. 2d 941

Opinion delivered June 5, 1972

*Frank J. Willis,* for appellant.

*Langston & Langston,* for appellees.

J. FRED JONES, Justice. This is an appeal by Dorothy Moore from a decree of the Pulaski County Chancery Court in favor of the appellees, J. F. Lawrence and his wife, whereby a trust was impressed on insurance funds in payment of a promissory note for $1,466.67 given to the Lawrences by Hal Moore, the husband of Dorothy Moore, prior to his death on October 8, 1968.

The complaint filed by the Lawrences alleged that Dorothy Moore is the widow of Hal Moore who died on October 8, 1968; that on August 30, 1968, Hal Moore borrowed $1,466.67 from the Lawrences and stated that he had assigned sufficient amount out of the proceeds of his life insurance to repay said loan, and that he had prepared a document that would insure " 'that Lawrence would be paid the loan from proceeds of life insurance on the life of the deceased,' Hal Moore." The complaint then alleged that the defendant, Dorothy Moore, had received proceeds from life insurance on the life of Hal Moore in excess of $1,466.67 and had refused to repay the loan to the Lawrences out of the proceeds of the life insurance. The complaint prayed that a trust be impressed upon the proceeds from the life insurance of Hal Moore, and that Dorothy Moore be ordered to pay the sum of $1,466.67 to the Lawrences.

Mrs. Moore filed an answer admitting her marital relationaship to Hal Moore at the time of his death and her receipt of insurance proceeds in excess of $1,466.67 as alleged in the complaint. She stated in her answer that Mr. Moore carried separate life insurance with his estate named as the beneficiary and that the net proceeds from that insurance should be available to his creditors. Mrs. Moore pleaded the statute of frauds as a complete defense to the complaint against her.

The chancellor found facts and entered the decree as follows: "the allegations of fact alleged in the Com-

plaint are true and Dorothy Moore is holding the sum of $1,466.67 in Trust for J. F. Lawrence and Helen Lawrence, which amount she shall forthwith pay to the said J. F. Lawrence and Helen Lawrence together with the costs of this action, for which execution, garnishment or other process may issue as upon a Judgment at Law."

On her appeal to this court Mrs. Moore relies on the following point for reversal:

"The court erred in entering judgment against appellant. Arkansas Statutes 38-101, Statute of Frauds, Second clause *Elm Springs State Bank* v. *Bradley*, 179 Ark. 437, 16 S.W. (2) 585."

The loan alleged by the Lawrences is evidenced by a promissory note typed on a letterhead of "Hal Moore & Associates, Realtors"; the note is dated August 30, 1968; is signed by Hal Moore and recites as follows:

"$1466.67
FOR VALUE RECEIVED, RECEIPT of the said amount being acknowledged, I, Hal Moore, the undersigned, hereby agree and promise to pay to J. F. Lawrence or Helen Lawrence, 1200 West 35th Street, Little Rock, Arkansas, or order, the sum of $1,466.67, on or before the 6th day of September, 1968.

This note is given in acknowledgment of funds advanced this date by said J. F. Lawrence and Helen Lawrence and this note is to be construed according to the laws of the State of Arkansas.

In the event of the demise of the undersigned *prior to the due date,* then the holder or holders of this note are to be paid by the Administratrix of the estate of the deceased from proceeds of life insurance on the life of the deceased." (Emphasis added).

Mrs. Helen Lawrence testified that she and her husband, J. F. Lawrence, had been acquainted with Mr. and Mrs. Moore for more than 20 years and that the two families had maintained a very close relationship through-

out the years. She testified that she and her husband first loaned money to the Moores on March 8, 1968, without security and that the money was repaid in June of the same year. She said that in the following month of July, 1968, Mr. Moore again needed money; that she and her husband loaned the money to him and that this loan was repaid by Mr. Moore on August 18, 1968, the loan involved in this litigation was made and in connection with this loan, Mrs. Lawrence testified as follows:

"A. Well, the 29th of August was our wedding anniversary.

Q. You and your husband's?

A. Me and my husband's and Dorothy and Hal dropped by for an informal visit. I am not sure they were aware of the fact that it was our anniversary, but nevertheless they did drop by. And he told us of this deal that he had, that he was working on and he was going to have to have some cash, more than he could put his hands on, and wanted to know if we would lend him the necessary cash to fix this deal up and not to exceed $1,500.00 and he said, 'it will be returned to you. I will assure you of that on my fraternal honor. And if I should die before this is paid, then it will be paid from my insurance.' Dorothy said, 'yes, if you will let him have this money, I will pay it from the proceeds of his insurance, because he has several policies of which I am the beneficiary and I will pay the money back to you.' "

Mrs. Lawrence testified that Mr. Moore called the following morning and advised that he had to have the money that very day. She said that her automobile was not at home when Mr. Moore called and Mr. Moore proposed that he send an automobile for her. She said that Mr. Moore did send a Mr. Barnes for her and that Mr. Barnes drove her to the bank where she withdrew the money from her account. She said that she then took the money to Mr. Moore and delivered it to him at his office.

She said that when Mr. Barnes arrived at her home, he handed her a sealed envelope containing the note offered in evidence. Mrs. Lawrence then testified as follows:

"Q. Did he ever repay this during his lifetime?

A. No, he didn't. We called him several times and he always said that red tape had to be unwound and he was working on it and it would be there. I last talked talked to him on the 4th of October, a Friday.

Q. Do you know what date Mr. Hal Moore was killed, or had his accident?

A. Yes. This was the 4th that I called him and he told me to meet him at his office, call him Tuesday Morning, October 8th and that he thought everything would be ready, the money would be there; that it was all tied up in a package already, but it had to go through a Monroe Bank and should be there no later than Tuesday. I called Tuesday Morning and the girl who answered said that Mr. Moore was out of town, but they did expect him back early afternoon, but that was the day that Hal didn't come back."

Mrs. Lawrence testified that about two weeks after Mr. Moore's death she took the note out to Mrs. Moore,

"And told her that I knew she knew about this, but I wanted to remind her. Of course, she had so much shock that she didn't hardly know whether she was coming or going and she said, yes, she did remember it. But she said, 'Helen, I can't pay you. I don't have any money.' I said, 'Dorothy, I didn't expect you to pay, I just wanted to remind you.' She said, 'Well, it does say it will be paid from the insurance and when I receive a settlement from his insurance policies, I will pay this debt.' "

Mrs. Lawrence testified that in the latter part of

January, 1969, she was visiting with Mrs. Moore and Mrs. Moore inquired as to whether she still had the note. She said that when she answered in the affirmative, Mrs. Moore said: "I am ready now to pay it and in a day or two, I will be over and give you the money and pick up the note," but that Mrs. Moore never did pay the note.

Mrs. Lawrence testified on cross-examination that the reason she did not request Mrs. Moore to sign the note was that when she discussed the loan with Mr. and Mrs. Moore, she didn't know that a note would be signed. She said that the prior loans were not evidenced by notes and that she and her husband would have loaned the money whether a note was signed or not. Mrs. Lawrence testified that the first time Mrs. Moore saw the note involved in this litigation was about two weeks after Mr. Moore's death when she took the note to Mrs. Moore and discussed it with her. She said she does not believe Mrs. Moore knew anything about the note prior to when it was presented to her after Mr. Moore's death. She testified that Mrs. Moore did not participate in any of the prior loans and that the only business transaction she and her husband ever had with the Moores when Mrs. Moore was present, was in connection with the loan and note in this case.

Mr. Lawrence testified that he and Mr. Moore belonged to the same fraternal organization and their families had been closely associated for about 20 years. As to Mrs. Moore's connection with the loan involved, Mr. Lawrence testified as follows:

> "A. When Mr. Moore brought up the question of needing some additional money for another real estate deal, Dorothy volunteered that in the event Hal wasn't around when the note came due, she would pay it out of the proceeds of his insurance."

On cross-examination Mr. Lawrence also testified that this one instance was the only business transaction he ever had with Mr. Moore when Mrs. Moore was present.

Mrs. Moore testified that she was employed by the

Southwestern Bell Telephone Company where she had been employed for 20 years and that she had never worked in her husband's real estate office. She denied the close personal relationship as testified by Mrs. Lawrence and did not recall the visit in the Lawrence home on the night prior to the loan made to Mr. Moore, and she denied that she had any knowledge that the loan was made or in existence until after the death of her husband. She said that the first notice she had of the existence of the note signed by Mr. Moore was when it was brought to her home by Mrs. Lawrence after Mr. Moore's death, and she denied any knowledge of the transaction leading to the signing of the note by Mr. Moore.

On cross-examination Mrs. Moore testified that she and her husband were good friends with the Lawrences through their fraternal work, and that they trusted each other. She said that they visited in each other's homes but that she does not recall visiting in the Lawrence home on August 29, 1968. She testified that the last time she recalled being in the Lawrence home was at a wedding anniversary reception held by the Lawrences. She testified that she does not recall what year that reception was held but does recall that there were a number of people attending the reception and present when she was there on that occasion. She testified that Mrs. Lawrence did present the note to her about two weeks after Mr. Moore's death and that she told Mrs. Lawrence she was not aware of the note. She said that she suggested to Mrs. Lawrence that the note be presented to the administrator of her husband's estate who was to be appointed in the near future, and that she later inquired of Mrs. Lawrence whether the note had been presented to the administrator for payment. Mrs. Moore testified that prior to Mr. Moore's death she knew Mr. Moore carried some life insurance with her as beneficiary but did not know the amount of the insurance he carried. Mrs. Moore testified that she was the beneficiary of life insurance amounting to the sum of $71,013.68 which was left on deposit with the Pennsylvania Insurance Company.

Mr. Ben McMinn testified that he was administrator

in succession of the estate of Mr. Moore and that there was a $3,000 double indemnity life insurance policy issued to Mr. Moore by a Northwestern Mutual Life Insurance Company with Mr. Moore's estate as the named beneficiary. He testified that all the insurance in which the estate of Mr. Moore was beneficiary totaled in excess of $8,000.

We, of course, try chancery cases *de novo* on appeal, and while we recognize that a trust in personal property may be declared, created or admitted verbally, and proved by parol testimony, the rule of evidence for the establishment of such a trust requires more than a mere preponderance of the evidence. The evidence must be clear, convincing and satisfactory. *Scott* v. *Miller*, 179 Ark. 7, 13 S.W. 2d 819 (1929). When we apply the above rule to the case at bar, we are unable to agree with the chancellor that the facts alleged in the complaint are true and that Mrs. Moore was holding the sum of $1,466.67 in trust for the Lawrences.

In the first place the loan involved in this case was the third of three loans in similar amounts. The first one, in the amount of $2,000, was borrowed on March 8, 1968, and repaid on June 26, 1968. The second one was for $1,100 borrowed on July 9, 1968, and repaid on August 19, 1968. Both of these loans were made without security and only a memorandum was given in connection with the second loan. The loan involved in the case at bar was made on August 30, 1968, only eleven days after the second loan was repaid, and Mr. Moore gave an unsolicited note in connection with this third loan. According to the tenor of the note, Mr. Moore agreed to repay the loan on or before six days after he borrowed it and the note provided that in the event of Mr. Moore's *death prior to the due date* of the note. the holder of the note was to be paid by the *administratrix of Mr. Moore's estate* from the proceeds of life insurance on Mr. Moore's life. Mr. Moore was in the real estate business and the record is clear that he was having some financial difficulty in connection with his real estate business and was relying on Mr. and Mrs. Lawrence

for unsecured quick short term loans. Mrs. Moore was separately employed by the telephone company and there is no evidence in the record that she knew anything at all about her husband's business or financial affairs, and there is no evidence that she ever knew anything at all about the first two unsecured loans he obtained from Mr. and Mrs. Lawrence.

To measure the evidence by the clear, convincing and satisfactory evidence rule as already announced, we turn now to the evidence pertaining to a trust agreement and Mrs. Moore's participation in connection with the loan here involved. The complaint was against Mrs. Moore and simply alleged that Mr. Moore borrowed the money from Mr. and Mrs. Lawrence and stated that he had assigned sufficient amount out of proceeds of his life insurance to pay said loan; that he further stated he had prepared a document that would insure "that Lawrence would be repaid the loan from proceeds of life insurance on the life of the deceased." It must be remembered that this loan was only for a period of six days and in so far as the record reveals, Mr. Moore was in perfectly good health at the time the loan was made. There is no evidence of anticipated or impending death, or of anything else that could be considered circumstantial evidence of intention to impress a trust on proceeds of insurance payable to Mrs. Moore as security for a six day loan.

It is obvious from the record that if Mr. Moore did make such promise to Mr. and Mrs. Lawrence, as alleged in the complaint, he had made no assignment at the time he said that he had; and if the aforesaid note was the document that he had prepared to insure "that Lawrence would be repaid the loan from proceeds of life insurance on the deceased," the instrument only provided that the *administratrix of Mr. Moore's estate* would pay from the proceeds of life insurance in the event of Mr. Moore's death prior to the *due date* of the note. The complaint against Mrs. Moore does not allege that she knew about, or had anything to do with, this transaction but the complaint simply alleges that she received pro-

ceeds of life insurance on the life of Mr. Moore far in excess of $1,466.67, and that she holds insurance funds in trust for Mr. and Mrs. Lawrence in this amount. Of course, we are talking here about what is *alleged* in the *complaint* but in the answers to interrogatories, apparently read, but certainly sworn to by Mr. and Mrs. Lawrence, they reiterate under oath the same facts as alleged in the complaint.

The interrogatories propounded to Mr. and Mrs. Lawrence requested them to state in detail "each business transaction had by you, or either of you, with the defendant, giving the dates, the amounts involved, the nature of the transaction, who was present at the times the transactions were entered into and consumated, the considerations therefor, and the dates each was concluded." It must be remembered that *Mrs. Moore* was the *defendant* in this case and in no place in their answers to these interrogatories do Mr. and Mrs. Lawrence mention that Mrs. Moore had any part in any of their transactions with Mr. Moore, or that she was present at any of the transactions or knew anything about them. After reiterating the allegations in the complaint as to Mr. Moore borrowing the money and *stating* that he had assigned proceeds from insurance to repay the loan and a document to insure its repayment, the answer to this interrogatory then states:

> "Upon the delivery of said document to Helen Lawrence, *when she delivered the cash to him,* Hal Moore turned his head to one side and wiped tears from his eyes and assured Mrs. Lawrence that this money was certain to be repaid because it would be paid out of his life insurance and that plaintiff, *J. F. Lawrence, was present at the time.* He also stated that he would repay it before he died, however, it was certain to be repaid in any event since he was assigning sufficient life insurance to pay it. Because of the fraternal relationship of these plaintiffs and Hal Moore and wife and Hal Moore's plea for his great need for the money and the visits of Hal Moore and his wife in the home of Lawrence and the visits of

the Lawrence family in the Moore home and because of the close and confidential relationship and the past business relationships and the fraternal relationship the Lawrence family *loaned this money to Hal Moore* without interest." (Emphasis added).

It must still be remembered we are talking about a six day loan to a man in apparent good health who had fully repaid two similar unsecured loans in similar amounts within five months just prior to this loan. It is noted that in this answer, both Mr. and Mrs. Lawrence say that upon delivery of the document to Mrs. Lawrence, when she delivered the cash to Mr. Moore, the plaintiff, *J. F. Lawrence, was present at the time.* Mrs. Lawrence testified at the trial that the Lawrence automobile was in the garage for repairs when Mr. Barnes called for them; that Mr. Barnes handed her the note in a sealed envelope and that Mr. Lawrence stayed at home awaiting delivery of their own automobile, while she went with Mr. Barnes to the bank and then went to Mr. Moore's office where she delivered the money to him.

As a result of an automobile accident, Mr. Moore died on October 8, 1968, which was more than 30 days after the due date of the note. According to Mrs. Lawrence, she and her husband called Mr. Moore several times in regard to the payment of the obligation. Mr. Moore always said that red tape had to be unwound and the last time she talked with him, which was October 4, he requested her to meet him at his office or get in touch with him on October 8 and the money would be there. According to Mrs. Lawrence, when she first contacted Mrs. Moore in regard to the note following Mr. Moore's death, Mrs. Moore advised her that she had no money and could not pay and Mrs. Lawrence said: "Dorothy I don't expect you to pay, I just wanted to remind you."

We recognize that an allegation in a complaint is usually inserted by an attorney and is not evidence at all. We also recognize that answers to interrogatories are many times prepared by the attorney representing the person to whom interrogatories are directed, but we can

only assume that the person who answers interrogatories has read and answered correctly when he says under oath that he has done so. We point out the circumstances and discrepancies in the evidence, not to question the truth or falsity of the testimony of any of the parties, but for the purpose of emphasizing the conflicting evidence in measuring it by the clear, convincing and satisfactory rule. Of course the testimony in this case is in irreconcilable conflict, and when measured by the above rule as stated in *Scott* v. *Miller, supra,* we conclude that it is not sufficient to support the creation of a trust in favor of Mr. and Mrs. Lawrence on the proceeds from the insurance paid to Mrs. Moore as the beneficiary.

We now reach the point designated by Mrs. Moore in her brief: There is no question that Mr. and Mrs. Lawrence loaned the sum alleged to Mr. Moore and that Mr. Moore never did repay it. Assuming that Mrs. Moore did promise to pay the debt when it was called to her attention after the death of Mr. Moore; in the absence of a trust on the insurance proceeds, her promise was clearly no more than a moral obligation and clearly within the statute of frauds. Ark. Stat. Ann. § 38-101 (Repl. 1962); *Colum* v. *Imboden,* 185 Ark. 890, 50 S.W. 2d 235; *Washum* v. *Lester,* 183 Ark. 298, 36 S.W. 2d 76.

We conclude, therefore, that the decree of the chancellor must be reversed.

Reversed.

Byrd, J., not participating.

Harris, C. J., dissents.