## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

AT THE

## DECEMBER TERM, 1866.

————◆●————

### HODGES EX PARTE.

On a contract for the sale of lands for the price of $30,000, one third to be paid at a short day, the balance in five years with interest, the vendors executed their covenant to the vendee, reciting the contract and binding themselves to make a good title to the lands on payment of the balance of the purchase money, unless the vendee shall then prefer to resell to the vendors; in such case they agree to pay him for the land $50,000, and if they fail or refuse to pay that sum for the land, at the times stipulated in the original sale, then to forfeit. and release to the vendee one half of the balance of the purchase money on

their sale to him: *Held*, that the latter portion of the contract, as recited in the covenant, was not an independent and separate contract, but that all its provisions should be taken and held as one contract, made upon sufficient consideration and binding upon the parties.

Where a defense, legally cognizable at law has been unsuccessfully interposed in a suit at law, the defendant will not be allowed to avail himself of it in a court of equity; but where the defence is altogether equitable, though unsuccessfully attempted at law, it may afterwards be interposed in equity, (14 *Ark.*, 363; 22 *Ark.* 282.)

Where a defendant in a suit at law comes into a court of chancery to injoin the proceeding, he must, as a general rule, submit to judgment; and the offer in his bill to make his defense only in equity and abide the decision of that court, is a substantial compliance with the rule.

A vendor who comes into a court of equity to enforce the execution of a contract for the sale of lands, should tender a perfect and unencumbered title; at all events, such a title as he contracted to make.

*Application for Mandamus to grant an Injunction.*

PIKE & ADAMS, for the application.

The complainant offers in his bill to withdraw all defence at law and submit to judgment for the reason that his relief is alone in equity; and therefore the rule in *Conway vs. Ellison*, 14 *Ark.*, 360, is not applicable in this case.

The contract to re-purchase is not a nude or naked contract, without consideration; but is as valid and binding upon the parties as the original contract of sale. *Silby vs. Silby*, 5 *A. & Ellis*, 548; 1 *Par. on Con.*, 448 *and authorities cited; ib.*, 430. It was part of the consideration for complainant to pay—to enter into the contract.

The contract of sale and re-purchase is one entire contract, made upon and for a large and valuable consideration, paid according to contract,—is an entire contract, good and obligatory in all its parts; and the vendors refuse to re-purchase as stipulated in the contract, or to release the $10,000 and make the vendee a good title to the land.

Mr. Chief Justice WALKER delivered the opinion of the court.

This case comes before us upon petition for mandamus to compel the judge of the first judicial circuit to grant to the petitioner an injunction. Whatever the real merits of the case may be, upon issue and proofs, we must, for the purposes of this application, consider the allegations of the bill as true.

It seems that, on the 5th day of November, 1859, Daniel and James Hughes, for the consideration of $30,000, ten thousand of which were to be paid on the 20th of February, 1860, and twenty thousand on the 1st of January, 1865, and for the payment of which Hodges executed to them his writings obligatory of that date, sold to the said Hodges twelve hundred acres of land, situate in the county of Crittenden, Arkansas; and thereupon executed to Hodges their covenant, reciting the sale of the land, a description of it, the consideration or price to be paid for it, and time of payment; and continuing as follows: "Now, therefore, in consideration of the premises, we the said Daniel Hughes and James Hughes, hereby bind ourselves, our heirs, etc., to the said Hodges, his heirs, etc., as follows: First, to make the said Hodges a good and sufficient title in fee simple to said land with full warranties, to be prepared by us and tendered to said Hodges, on the payment of the balance of said purchase money for said land, unless the said Hodges shall, on the maturity of said balance of said purchase money, prefer to re-sell said tract of land to us; then we agree to pay him for said land the sum of $50,000; and in case we fail or refuse to pay said Hodges or his assigns the said sum of $50,000, one third cash, on the same terms on which it is now sold, say balance in five years time with interest, for said tract of land at the time appointed above, then we forfeit and release to said Hodges or his assigns the one-half of said balance on said purchase money for said land. Said Hodges is to be allowed, before or after the first day of January, 1865, to make his election whether he will receive a deed for title to said land as aforesaid, or re-sell the same to us at the price of $50,000. And he is not required to give notice of his said election until

said last payment for said land is demanded; and then, notice to the person or persons so making the demand is notice to us both of such election. The said Hodges agrees on his part, if any of the titles fail to said land, and he is evicted from possession of any of said land, to accept, in lieu thereof, acre for acre of the lands adjoining said tract and immediately south of the military road, known as the Hill lease, together with other lands south, east or west of said lease: and said Hodges is to retain possession of said land on the south side of said road, until the title of the entire tract first aforesaid is perfected by us, if the same should not be made perfect at the expiration of the lease of said Hill: said Hodges further agrees, on his part, if he fails to make payment of the said first payment of $10,000, (and we do not accept less) on or before the 20th day of January, 1860, then this contract for the sale of said land from us to said Hodges is void, and not binding on any of the parties aforesaid.

These several mutual covenants were subscribed and sealed by both parties, and in regard to which and the circumstances connected with, and growing out of it, complainant relies for equitable relief.

Amongst the most prominent reasons assigned by the judge for having refused to grant the injunction is, that so much of the contract as relates to the re-sale of the land by Hodges to Hughes is without consideration and void. There are several acts covenanted to be performed by the respective parties, intended to anticipate and provide for contingencies that might or not arise, and to secure an election to Hodges, when the last payment became due, or thereafter, upon request of payment, either to pay the residue of the purchase money and take a deed for the lands, so to be conveyed, or to re-sell or release to the Hughes his claim to the land, giving to them notice at that time of such intention, which re-sale or release the said Hughes agreed to accept, and pay to Hodges $50,000 for the land.

This covenant of the Hughes, by which they bound themselves, upon notice to that effect, to take back the land sold to Hodges

and pay him $50,000 for it, was not an independent and separate contract, but it was part of the original contract, in consideration of which, it may be, that Hodges was induced to make the purchase. The Hughes had secured to themselves the immediate use of $10,000, and the annual payment of the interest on $20,000. In consideration of this and the covenants made by Hodges to them, they agreed with Hodges that, if he preferred doing so, they would take back the land and allow him $50,000 for it, two-thirds of which was not to be paid short of five years thereafter. In view of this contract and its several provisions, we do not hesitate to decide that it should be taken and held as one contract, made and executed for the consideration of the sum agreed to be paid for the land, and the several mutual covenants of the parties.

In this conclusion we are fully sustained by the case of *Stansbury vs. Feringer*, 11 *Gill & Johnson, p.* 152, where it is said, that where a contract consists of several distinct and separate stipulations on one side, and a legal consideration is stated on the other, it must be considered that the entire contract was in the contemplation of the parties in each particular stipulation and forms one of the inducements therefor; and no one stipulation can be supposed to result from, or compensate for the consideration, or any part of it, exclusive of other stipulations, unless the parties have expressly so declared.

So, any benefit accruing to him who makes the promise, or any loss, trouble or disadvantage undergone by, or charge imposed upon him to whom it is made, is a sufficient consideration to sustain the promise. *Smith on Contracts, page* 90.

Thus holding the contract upon sufficient consideration and binding on the parties, it becomes our duty, if practicable, to give it effect in all its parts, according to the intention of the parties: and when such intention can be distinctly ascertained, it will prevail. *Story on Con., ch.* 21, *p.* 3.

Under this contract Hodges took possession of the land, and thereafter, on the 9th of January, 1860, by a subsequent agreement, the Hughes conveyed 280 acres of the land embraced in

the covenant to one Reuben Chick, in trust for the use of Hodges' wife, for which he paid to them $7,000 cash, which sum was to have been deducted from the amount due them : That in addition to this sum and $10,000, the first payment on the land, Hodges, on the 1st of January, 1862, paid to them $1,363 40, taken together, making the whole sum paid to Hughes $18,363 40 : That at the time the bond for $20,000 became due, Hughes and their representative resided in the state of Tennessee, within the lines of the Federal army and beyond reach with personal safety : That soon after the close of the war, in June, 1865, he gave to the holder of the bond notice of his election to re-sell the lands upon the terms agreed upon, but that the holder of the bond and representative of Hughes utterly refused to comply with their covenant, although he offered at the time to re-sell and convey to them all his title and interest in said lands free from all incumbrance which had been placed upon it either by the deed for 280 acres to the use of his wife, or a deed of trust which had been executed by him to secure the payment of a sum of money ; That he now offers to remove all incumbrance which has accrued since his purchase, and convey and deliver to the vendors, Hughes and their representatives, at such time and in such manner as the court may direct.

Complainant insists on his right to a specific performance of the contract under his election : Exhibits and makes part of his bill, the proceedings in the court of law on the bond for $20,000, and several lesser notes given for the payment of the annually accruing interest on such bond : States that he has no valid defence at law, offers to withdraw all defence in that court, and to submit to judgment as the court of chancery may direct, to make his only defence there, and in all respects submit to and abide the final decision of that court.

It will be observed that the defendant had interposed a defence in the suit at law on the bond and notes. What that defence was does not appear from the pleadings. Had the defence been such as might have been legally interposed in either court, after the

defendant in the court of law had elected to make such defence there, he would not, as repeatedly decided by this court, be permitted to abandon such defence and offer it in a suit in chancery upon the same subject matter. But where the defence is altogether equitable, even though unsuccessfully attempted in the court of law, it may afterwards be interposed in equity. *Conway vs. Ellison*, 14 *Ark. Rep.*, 363; *Worthington vs. Curd & Co.*, 22 *Ark. Rep.*, 282.

As a general rule, it is true that, where a defendant in a suit at law comes into a court of chancery to injoin proceedings at law, he must submit to judgment; that is, the plaintiff in the suit at law has a right to be placed in such situation, that when the injunction is dissolved (should such be the case,) he may, without unnecessary delay, have execution of his judgment. This, the complainant expressly offers to permit, to make his only defence in equity and abide the decision of that court, which we think is a substantial compliance with the rule.

The bill seems to have been considered by the judge, to whom application was made for an injunction, as intended to rescind the contract, not, as we have said, to enforce its specific execution: and, therefore, all the questions with regard to the defect of title in the vendor, or the sufficiency of the allegations with regard to conflicting titles need not to have been considered, because, even admitting that the title in the vendor was perfect, which, according to the allegations of complainant, is very questionable, indeed with regard to several tracts much incumbered, still we can see no sufficient reason why the vendor should not be required to take back the land upon the terms agreed upon at the time as part of the contract of purchase. There is nothing in the enforcement of the contract which would be considered oppressive and hard, or against good conscience. But for the derangement in the system of labor and the probable change in the valne of lands, the result of the late civil war, which could not have been anticipated by the parties contracting, it is not improbable that it would have been a matter of speculation and profit for the vendors to have

taken back the land upon the terms agreed upon. They had already received from Hodges $18,363 in part payment of the land. The complainant alleges that he has cleared nearly four hundred acres of land and made other improvements, in all, of the value of $15,000; which, when added to the balance unpaid of about $14,000, would make $47,000. The largely increased value of the lands by improvements made by complainant, the use of which the Hughes were to have for the five years before the payment of the two-thirds of the purchase money, would be considered in the equitable settlement of rents, etc. But, then, if this should prove a hardship, or in the opinion of the Hughes, be oppressive, they expressly reserved to themselves the right to remit $10,000 of the original purchase money.

When the vendor comes into court (as the complainant has in this case,) to enforce the execution of a contract, he should tender a perfect and unencumbered title; at all events a title such as he contracted to convey. In this case, it was contemplated that the title should be such as the Hughes had when they sold to him; and before he can enforce the execution of the contract, the court will see that he remove from the land all incumbrances placed on it since his purchase. Complainant admits that he has encumbered two hundred and eighty acres by deed in trust to the use of his wife, and the other lands by a deed of trust to secure the payment of a sum of money; but says he can and will disencumber the land, and convey it at such time and in such manner, as the court may direct. Whether he can do this or not, or whether the several allegations in the bill are true or not is not for us now to consider.

In view of the whole case, as presented by the bill and the law governing such cases, we are of opinion that the judge of the circuit court for the first judicial district should have granted to the complainant an injunction in accordance with the prayer of his bill. And that a peremptory mandamus be issued requiring said judge to grant to the complainant an injunction herein, in accordance with the prayer of his bill, under the rules and practice governing such cases.