CHICAGO MILL & LUMBER COMPANY *v.* MATTHEWS.

Opinion delivered April 14, 1924.

1. ADVERSE POSSESSION—CONTINUITY.—An agreement by a squatter to buy the land from the owner made before he has acquired title by adverse possession is a recognition of the owner's title, breaks the continuity of his own possession, although the contract was for a deed to the son of the squatter.

2. FRAUDS, STATUTE OF—CONVEYANCE—VERBAL AGREEMENT.—An agreement to convey land, to be binding, must be in writing.

3. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS.—In a suit by a vendor to enforce a contract to buy land, where defendant denied the contract, but did not plead the statute of frauds, it devolved on the plaintiff to prove the existence of a valid contract in writing.

4. FRAUDS, STATUTE OF—ENFORCEMENT OF CONTRACT TO SELL LAND.—Though a vendor of land seeking specific performance of a contract to sell land tenders a deed with his complaint, he cannot enforce the contract without proving a valid and enforceable contract.

5. FRAUDS, STATUTE OF—ENFORCEMENT OF ORAL CONTRACT.—In a suit by the owner of land seeking specific performance of a verbal contract to sell the land, defended on the ground of adverse possession, plaintiff could not use its oral and unenforceable

agreement with defendant to purchase the land as breaking the continuity of adverse possession by recognition of his title without being obliged to abide by such agreement if the defendant elected to purchase it.

Appeal from Mississippi Chancery Court, Osceola District; *Archer Wheatley,* Chancellor; reversed.

*Little, Buck & Lasley,* for appellant.

Appellee's possession after he went on the land in 1912 was not continuous to the extent required by the statute. His possession was broken by the removal, taking his family with him, and going down the river to make and harvest crops during the years 1913 and 1914, leaving nothing about the place to indicate that possession was being claimed. 153 Ark. 620. The statute of limitations did not, therefore, begin to run until the fall of 1914, when appellee returned to the premises. Appellee's negotiations to purchase the land, and his agreement to purchase the same is clearly established by the evidence, constituted a clear recognition of appellant's title, and an interruption of the adverse possession. 2 C. J. 104; Ann. Cases, 1912C, p. 955; 80 Ark. 446. On the question of estoppel, see 10 R. C. L. 698; 16 Cyc. 742; 35 Ark. 377; 91 Ark. 148.

SMITH, J. This suit was begun on April 10, 1920, by the filing of a complaint by the appellant lumber company, hereinafter referred to as the company, which contained the following allegations: That the company was the owner of that part of the northwest quarter northeast quarter section 30, township 13 north, range 9 east, which lies east of the east meander line of Little River, and that on the 18th day of March, 1918, it contracted and agreed to sell same to J. M. Matthews and G. W. Matthews for the consideration of $397.25, and, in accordance with said agreement, the defendants were permitted to go upon the land and to take possession thereof, and the company caused a proper deed to be executed by its officers and tendered the same to the defendants, who refused to accept it or pay the consideration agreed upon. There was a prayer for the specific performance of the

contract. The company prayed that, if it were mistaken in the relief asked, the defendants be declared trespassers, and that it have judgment for the possession.

An answer was filed by the defendant, G. W. Matthews, in which he denied that the company was the owner of the land, or that he had contracted to purchase it, or that he had entered into the possession of the land with the company's consent, or had remained on the land with its permission. For further answer he alleged that he entered upon the land as owner, and had, for the last nine years, continuously occupied the land as owner, his possession at all times being open, adverse and hostile, and that he had cleared the land and put it in cultivation, and had built a house and barn and other improvements worth $3,000 on it, and he prayed that the complaint be dismissed.

The chancellor found that defendant entered into the possession of the land in July or August, 1912; and we concur in that finding. The testimony shows that defendant thought the land on which he entered, and upon which he first built a one-room house, was unsurveyed government land, and his purpose was to preempt it and claim it as a homestead. About two years after entering upon the land his presence there was discovered by a representative of the company, to whom the defendant Matthews stated that if the land was not government land he did not and would not claim it. The undisputed testimony shows that the land was not government land, but was the land of the company.

The defendant at first cleared only a small part of the land, less than an acre in area, but thereafter he continued clearing the land, and extended his fence, as he cleared the land, to include the clearing.

The testimony establishes the fact that in 1913 and 1914, when defendant had cleared only a small area of the land, he moved down the river and made two crops, although he moved back in the fall of each year after completing his crops. He left so few of his effects in the house that passers-by thought the place was abandoned.

Defendant testified that, although he took his family with him when he went away to make the crops, he left a table, stove and bedstead there, and some stock running loose in the woods.

After 1914 defendant resided on the land, making each year some addition to his clearing, and these conditions continued until 1917, at which time the company determined to oust defendant, and a notice to vacate was served on him.    The negotiations for the purchase of the land then commenced.    The defendant asked that the deed be made to his son and co-defendant, and explained that he wished this done as he was attempting to homestead some government land.    The company refused to do this because the son was a minor.    Defendant then agreed to pay all cash for the land, and upon this condition the company agreed to execute the deed to the son.    The company later caused an accurate survey to be made of the land and the acreage measured, and its officers executed a deed to the son.    The negotiation was had entirely with the father, who was in fact the purchaser and who was to furnish the purchase money.    Defendant G. W. Matthews was notified that the deed was ready for delivery, but he advised that he could not take the deed up at that time, but would do so in the fall (of 1918), when he would have some money.

The manager of the company testified that he did not press the matter of closing the sale, as he regarded it as settled, and assumed that Matthews would take the deed and pay for the land as soon as he was able, and on this assumption he extended indulgence by way of granting time.    Thus the matter continued until November, 1919, when defendant disclaimed holding by the company's permission, and asserted his ownership of the land by reason of his possession.

Without setting out the testimony of the numerous witnesses, we announce our conclusion that the great preponderance of the evidence supports the company's contention in regard to the contract to sell the land and defendant's agreement to buy it.

The defendant was a squatter who thought he was on government land, and during the years 1913 and 1914 he did not live on it, but moved several miles away, and made a crop during each of those years, and left the premises in a condition which indicated that he had moved away. His conduct no doubt caused the company to be less active in attempting to eject him or to close the sale of the land, and, when that agreement was reached, we think there was such a recognition of the company's title as to amount to a break in the continuity of the defendant's possession.

It will be remembered that, when the agreement for the purchase of the land was reached, the defendant could not then have claimed title by adverse possession, for he had been on the land less than seven years.

In the case of *Shirey* v. *Whitlow,* 80 Ark. 444, it was said: "If one, before the statutory period has run, and before he has acquired title by adverse possession, acknowledges or recognizes the title of the owner, such recognition will show that his possession is not adverse, and the statute of limitations will not commence to run against the owner until the adverse claimant repudiates the title of the owner."

We think there was here such a distinct recognition of the company's title as to break the continuity of defendant's possession. *Webb* v. *Spann,* 157 Ark. 328; *Blackburn* v. *Coffee,* 142 Ark. 426; *Dermott* v. *Stinson,* 144 Ark. 208; *Hudson* v. *Stillwell,* 80 Ark. 575.

It is true the defendant Matthews proposed to take the title in his son's name, and that it was he, and not his son, who was in possession; but this was the father's transaction. It was he who proposed to buy the land and pay the consideration, and it was he who thus recognized the title of the company.

The court found that it was impossible to ascertain just what land the defendant occupied for more than seven years, but that he had occupied at least one acre for that time, and directed a surveyor to lay off an acre in the form of a square with the residence as the center,

and this was done, and this acre, upon which all the buildings had been erected, was decreed to belong to defendant, and the remainder was decreed to the company.

As we have said, this suit was brought to enforce the specific performance of a contract of sale. The company—the owner of the land—brought the suit, and has prayed that relief.

The agreement sued on was one to convey the title to land, and, to be valid, should have been in writing, but was not. It is true the defendant did not plead the statute of frauds, but he did deny the existence of the contract sued on. Under these circumstances it devolved upon the plaintiff to prove the existence of a valid contract, which must have been a written contract. *Cook* v. *Cave, ante* p. 407.

It is true the vendor in the deed tendered brings this suit, which would, of course, be a waiver of the statute by it, but the party here sought to be charged is the vendee, and in the case of *Jones* v. *School District,* 137 Ark. 414, we held that "the words, 'the party to be charged,' refer not to 'the party to be charged' with the contract, but to 'the party to be charged' in the action, that is, the defendant."

We have held that a suit for specific performance of a contract to convey land may be brought by the owner of the land as well as by the prospective purchaser. *Garrison* v. *Geren,* 159 Ark. 9; *Robinson* v. *Florence Sanitarium,* 149 Ark. 355; *Dollar* v. *Knight,* 145 Ark. 522; *Wilkins* v. *Eanes,* 126 Ark. 339; *Ex parte Hodges,* 24 Ark. 197. But that relief cannot be awarded here, primarily because the company does not prove a valid and enforceable contract, for the reason that the contract was not in writing.

It appears that the continuity of the defendant's possession was broken by the recognition of the company's title, in conjunction with the character of possession which the defendant had maintained, and the company is therefore entitled to recover the possession of the land. But it does not appear to be equitable to permit the

company to use this unenforceable agreement to buy for the purpose of breaking the continuity of the defendant's possession without imposing on the company the obligation of abiding by that agreement, if the defendant so elects.

It follows therefore that, to do equity, the defendant should be allowed, if he so elects, to claim the benefit of the contract which broke the continuity of his possession, but, if he does not elect to take advantage thereof, a decree will be awarded the company for the possession of the land.

This land appears to have been carefully measured by the company's surveyor, and the deed tendered contains an accurate description thereof, and recites the consideration to be $397.25, this sum being arrived at by multiplying the ascertained acreage by the agreed price per acre.

This deed to the defendant was executed March 18, 1918, but was not acknowledged until April 6 of that year, when it was sent from the general office of the company in Chicago to the company's local office in Blytheville, and letters were written to the defendant immediately that the deed was ready for delivery. We think the tender of the deed was made not later than April 15, and interest thereon at six per cent. per annum should be calculated from that date until the date when payment is made, if the defendant elects to take the benefit thereof.

It is therefore ordered that the decree of the chancery court be reversed, and the cause will be remanded, with directions to enter a decree giving the defendant a reasonable time, to be fixed by the court, within which to pay the sum herein ordered to be paid, and the company, upon the tender thereof, will deliver the deed heretofore tendered to the defendant, or, in lieu thereof, if the same is not now available, another deed with the usual covenants of warranty and a correct description of the land, and, in default of such payment, a writ of possession will be

awarded to eject defendant from the possession of the land, the same to be restored to the company.

Mr. Justice HART thinks the decree should be reversed and the cause remanded, with directions to enter a decree in favor of appellants for the possession of the land.