## STEGALL et al. v. JACK et ux.

No. 24469.   March 26, 1935.

Rehearing Denied April 23, 1935.

Application for Leave to File Second Petition for Rehearing Denied May 7, 1935.

McKeown & Green, for plaintiffs in error.

R. E. Bowling, for defendants in error.

PHELPS, J. L. R. Stegall lived at Maud, Pottawatomie county, Okla. His brother, B. F. Stegall, lived in the state of Georgia. W. L. Tidwell, a real estate broker, also lived at Maud. He sought to interest L. R. Stegall in the purchase of farm lands. Stegall advised him that he could not purchase, but his brother in Georgia would probably buy a farm. Walter Jack and his wife, Valla E. Jack, owned a farm of 190 acres near Davis, in Murray county, Okla., which they listed for sale with Mr. Tidwell. In an effort to interest the Stegalls in the purchase of this land, Mr. Tidwell took L. R. Stegall down to inspect the farm. After inspecting the same, Mr. Jack, Mr. Stegall, and Mr. Tidwell went to the First National Bank at Davis to consult H. N. Horner, the banker, about the deal.

It was ascertained that the Commerce Trust Company had a first mortgage loan against said property in the sum of about $7,000. The First National Bank of Davis had two subsequent mortgages, one of which was for $3,500. Mr. Horner immediately showed considerable interest in making the deal and attempted to get Stegall to sign a contract for his brother in Georgia to purchase the land. Stegall refused to do so, whereupon Horner asked him to sign his brother's name to a check for the down payment, subject to his brother's approval of the deal. He declined to do that. It was then agreed that the land would be sold to Stegall for $64 per acre, subject to approval of B. F. Stegall. Then both L. R. Stegall and H. N. Horner, from Horner's bank, phoned to Bert Harris, of the Maud State Bank, requesting him to communicate with B. F. Stegall by wire, at Stegall's home in Georgia, and request him to wire $2,500 deposit to the Maud State Bank. Harris did this and Stegall immediately wired the $2,-500 and it was deposited to the credit of B. F. Stegall in the Maud State Bank.

Horner prepared a draft for Jack on B. F. Stegall for the purchase price of the land over and above the first mortgage, which draft was also signed by L. R. Stegall. Jack and his wife executed a deed conveying the land to B. F. Stegall and Horner forwarded this draft, deed, and release of the mortgage to the Maud State Bank, and caused abstract of title to be forwarded to the bank for examination. These instruments were placed in escrow, and without any authority or directions whatever from B. F. Stegall, Harris, of the Maud State Bank, took the money formerly deposited to the credit of Stegall in his bank, purchased a cashier's check with it and deposited this cashier's check in escrow with the other papers. About two weeks later Stegall came from Georgia to Oklahoma, inspected the land, declined to make the deal, and demanded the return of his money. Walter Jack and Valla E. Jack then filed suit in the district court of Murray county against B. F. Stegall and the Maud State Bank for the purchase price of the land, or the difference between the first mortgage and the purchase price of the land at $64 per acre, claiming that the transaction constituted a sale and purchase of the land through L. R. Stegall as agent for B. F. Stegall. The court issued its order, restraining the Maud State Bank from paying the $2,500 deposit back to Stegall. (Later, Harris, the banker, was by the district court of Murray county appointed receiver for this $2,500 deposit and ordered to hold it until the termination of the lawsuit.)

Service was had on L. R. Stegall in Pottawatomie county, and purported service upon B. F. Stegall, the nonresident, by publication. The case was tried to the court without a jury and judgment rendered for plaintiffs for $5,038.75 and $250 attorney's fees. The judgment further directed that the $2,500 deposited in the Maud State Bank be delivered to the plaintiffs to be credited on the judgment, and the balance of the judgment was made a lien against the land, subject to the first mortgage of about $7,000. The judgment further provided that L. R. Stegall be relieved from further liability and that there be no personal judgment against B. F. Stegall, from which judgment the Stegalls prosecute this appeal.

In plaintiffs' petition they declare on an oral contract, and this action was instituted and prosecuted upon the theory that when Mr. and Mrs. Jack executed the deed and caused it to be deposited in the bank, title was thereby transferred to B. F. Stegall, and that the grantors had a lien thereon for the unpaid balance of the purchase price, and it was, evidently, on this theory that they sought to obtain service by publication upon defendant B. F. Stegall. Plaintiffs in error contend that there was no delivery of the deed and that title did not pass, therefore, the deed conveyed no interest in the real estate to B. F. Stegall, and service by

publication could not be had upon the non-resident defendant. They also contend (and in this contention they are abundantly supported by the evidence) that in all the negotiations and transactions L. R. Stegall merely acted as the agent for B. F. Stegall in trying to locate a farm; the value, character, and price of which would be satisfactory to B. F. Stegall upon his personal inspection thereof. In the evidence there is no serious contention that L. R. Stegall did more than to act as agent for his brother, that such agency was not expressed in writing, neither was there any written contract of sale entered into between the seller and agent of the proposed purchaser. All of the evidence on the part of plaintiffs in the trial court as to the agency is to the effect that L. R. Stegall told the real estate agent and told the banker that he had a letter from his brother authorizing him to offer $65 per acre for the land, but the evidence on the part of the defendants was to the effect that the defendant B. F. Stegall wrote his brother that if the seller would agree to accept $65 an acre, he would come out and inspect the land, but did not want to make the trip until he had such proposition.

Section 9455, O. S. 1931, provides that the following contracts:

"are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent. * * *

"Fifth. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

The only writing in the instant case is the deed signed by Mr. and Mrs. Jack and the draft drawn by Jack on B. F. Stegall, which, for some unexplained reason, L. R. Stegall also signed. We cannot conclude that what was done in this case amounted to a compliance with the above-quoted statute. In this we are supported by innumerable opinions of this court, running back to territorial days, where this subject was discussed in Halsell v. Renfrow, 14 Okla. 674, 78 P. 118, and in the third paragraph of the syllabus the Supreme Court of the territory of Oklahoma said:

"A memorandum, to be sufficient under the statute of frauds, must be complete in itself, and leave nothing to rest in parol."

This rule has been reannounced by this court many times and has become so funda-mental that the citation of authorities supporting the same is unnecessary.

It cannot be conceded that what was done in the instant case constituted an executed contract. At the time this purported contract was entered into the Jacks were living on this farm, and they continued to reside there, although, as a part of the proposed contract, Stegall was to receive rentals. There is some claim made that Stegall took possession, and as evidence of that fact there is testimony that he gave some directions as to cutting the hay on the farm, but his explanation of this is that the hay was ready to cut and, pending the negotiations, he did not want to see any loss sustained by reason of the failure to properly care for the hay, and he merely consented that the same should be harvested, although it does not appear he ever received any rentals from the place, and the evidence is wholly insufficient upon which to base a finding that Stegall took possession of the property. Under the evidence we find that there was neither sale nor enforceable contract of sale of this real estate. In Davis v. Holman, 163 Okla. 59, 20 P. (2d) 575, in the third paragraph of the syllabus by the court, this court used the following language:

"The mere execution of a deed by the owner of real property is not sufficient to take the contract for sale of such property out of the provisions of the statute of frauds as against the alleged purchaser."

Even if it should be conceded that the signing of the deed and placing it in escrow by plaintiffs together with the draft drawn on B. F. Stegall and signed by L. R. Stegall was sufficient to comply with the provisions of section 9455, O. S. 1931, that "some note or memorandum thereof be in writing," even then the plaintiffs could not prevail for the reason that it is not "subscribed by the party to be charged"; and, even if it should further be conceded that L. R. Stegall's act in signing the draft be considered as agent of B. F. Stegall, yet this would not constitute an enforceable contract for the reason that it fails to comply with the further provisions of this section of the statute providing that such contracts are invalid "unless the authority of the agent be subscribed by the party sought to be charged." In Davis v. Holman, supra, in the first paragraph of the syllabus this court said that:

"Words 'party to be charged' in statute of frauds means party against whom contract is sought to be enforced."

The contract sought to be enforced here is against B. F. Stegall. The evidence does not disclose any acts or conduct of his in-

dicating that there was an executed contract of sale. There is no evidence that he signed any written contract or memorandum agreeing to purchase. The effort to hold him liable because of the acts of his agent, L. R. Stegall, must fail because if L. R. Stegall had any authority to make the deal for B. F. Stegall, that authority was not expressed in writing "subscribed by the party sought to be charged." The judgment is against the clear weight of the evidence, and is, therefore, reversed, with directions to the trial court to dismiss the action.

McNEILL, C. J., and RILEY, CORN, and GIBSON, JJ., concur.