**PETROLEUM EXCHANGE Inc.**

**v.**

**POYNTER.**

No. 7396.

Supreme Court of North Dakota.

May 26, 1954.

J. K. Murray, Bismarck, for appellant and defendant.

William R. Mills, Bismarck, for plaintiff and respondent.

SATHRE, Judge.

The plaintiff corporation brought this action against the defendant A. M. Poynter for damages for breach of an alleged agreement to accept from the plaintiff assignments of two oil and gas leases covering lands in Emmons County, North Dakota.

The complaint sets forth two causes of action. The first cause alleges that on the 16th day of April 1952 plaintiff and the defendant through his agent W. M. Berger, entered into a contract whereby plaintiff agreed to assign to defendant one oil and gas lease covering 1,042 acres of land in Emmons County, North Dakota and that defendant agreed to pay plaintiff the sum of $2,605 on or before 30 days from the presentment of the draft issued by the said W. M. Berger by and on behalf of the defendant. The second cause of action alleges that on the same date an identical agreement was made as to 481.81 acres of land in Emmons County and that the defendant agreed to pay $1,204.50 on or before 30 days from the presentment of the draft issued by said Berger as agent of the defendant. The complaint then alleges that the plaintiff was at all times ready and able to perform the contracts and that the defendant refused to perform the same. Judgment is demanded for the sum of $1,042.00 and $712.70.

The defendant answered by general denial, except that it admitted the corporate existence of the plaintiff, and as a further defense he denied specifically that W. M. Berger was his agent or that he ever ratified or approved said assignments and that he never honored or accepted the drafts, or that he personally or through an agent or agents entered into any contract relations with the plaintiff for the acceptance of assignment of the leases referred to in the complaint.

The plaintiff corporation and defendant are both engaged in the purchase, sale and assignment of gas, oil and mineral leases in the State of North Dakota. The plaintiff contends that on or about April 12, 1952 it negotiated with one W. M. Berger, an agent of the defendant for assignment to the defendant of two oil and gas leases covering land in Emmons County, North Dakota. These leases were obtained by the plaintiff from the owners of the land involved on or about the 11th day of March 1952. W. M. Berger testifying for the plaintiff stated that he was a salesman

for Sears Roebuck and that occasionally he contacted land owners and obtained oil and gas leases from them and subsequently sold or assigned them at a profit. He contacted the defendant A. M. Poynter and inquired whether he was interested in taking assignments of gas and oil leases. Poynter advised him that he was interested in taking such leases and he handed Mr. Berger some of his contract or assignment forms and also some of his sight draft forms. The draft forms carried Poynter's printed name thereon. Thereafter W. M. Berger secured from the plaintiff two assignments in which he inserted defendant's name as assignee, and Mr. Berger drew two sight drafts signed by himself on the First National Bank of Bismarck, payable in 15 days upon approval of title, and then delivered the assignments to one Mr. Locke who thereafter forwarded them to the defendant A. M. Poynter at his place of business at Shreveport, Louisiana. The defendant refused to accept the assignments and the drafts and the assignments were returned to plaintiff's manager Mr. Mills, and were retained by him. One of the assignments was thereafter reassigned by plaintiff to a third party. Plaintiff then brought his action against the defendant to recover the full purchase price of one assignment and the difference in the price obtained for the second assignment and the price fixed by the terms of the assignment.

The case was tried in the district court of Burleigh County, North Dakota, before the Honorable Geo. Thom Jr., district judge and a jury. The jury returned a verdict in the sum of $1,016 and judgment was entered and the defendant appealed.

When both parties had rested the defendant made a motion for a directed verdict in his favor upon the grounds that the leases were agreements for leasing or assignment of an interest in real property and under the provisions of Section 9-0604 NDRC 1943, Subdivision 4, were required to be in writing; that there is no proof in the record of any contract in writing by the defendant to purchase the assignments; that the said leases or assignments were in violation of the Statute of Frauds of this State in that the amount involved exceeded $500; that neither the defendant or any person or agent in his behalf had ever signed any memorandum in writing accepting the said assignments; that the defendant had at no time accepted the assignments but rejected the same and refused to accept the same on the ground that the plaintiff did not have good title to said leases. The motion was denied and the issues were submitted to the jury and the jury returned a verdict for the plaintiff for $1,016. Thereafter in due time the defendant made a motion for judgment notwithstanding the verdict which motion was denied. The defendant appealed from the judgment and from the order denying his motion for judgment notwithstanding the verdict.

There is a conflict in the evidence as to whether or not Berger was the ostensible agent of the defendant Poynter and if this were the only issue in the case it was properly submitted to the jury and the jury having returned a verdict for the plaintiff it should not be disturbed. There is however, no evidence in the record that W. M. Berger had written authority from the defendant as his agent to purchase and accept the oil and gas leases and assignments involved in this action.

The defendant contends that plaintiff brought this action to enforce an agreement for acceptance of transfers of interests in real property and since Berger, alleged agent of defendant, was not authorized in writing to make such acceptance, plaintiff's action was barred by the statute of frauds, section 9-0604 NDRC 1943, Subdivision 4.

The real issue on this appeal is therefore whether under the provisions of said Section, Berger was authorized as the agent of the defendant to accept the assignments in question and to bind him to their terms. Section 9-0604 provides:

"The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and

subscribed by the party to be charged, or by his agent:

\* \* \* \* \* \*

"An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged.".

The first question presented is whether under the statute quoted an oil, gas and mineral lease or an assignment thereof in the form of the leases and assignments involved in the instant case is an interest in real property. While this question has not been considered by this court it has been held by the courts in most of the oil producing states that oil, gas and mineral leases are transfers of interests in real property. In the case of Piney Oil & Gas Co. v. Allen, 235 Ky. 767, 32 S.W.2d 325, 326, the Supreme Court of Kentucky had under consideration an oil and gas lease similar in form and language to the leases involved in the case at bar, and it was there held that such lease creates an interest in real estate. We quote from the opinion:

"It is also settled that an oil and gas lease creates an interest in real estate, and is governed by the principles of law applicable to land. Wolfe County v. Beckett, 127 Ky. 252, 105 S.W. 447, 32 Ky.Law Rep. 167, 17 L.R.A.,N.S., 688; Beckett-Iseman [Oil] Co. v. Backer, 165 Ky. 818, 178 S.W. 1084; Rader v. Shaffer, 186 Ky. 802, 218 S.W. 292; Kash v. United Star Oil Co., 192 Ky. 422, 233 S.W. 898".

In the case of Standard Oil Co. of Louisiana v. Oil Well Salvage Co., 170 Ark. 729, 281 S.W. 360, 363, the plaintiff and defendant were holders of oil, gas and mineral leases covering the same lands executed by the landowners as lessors. The lease of the Oil Well Salvage Company was subsequent to the lease of the Standard Oil Co. The Salvage Company brought action

against the Standard Company alleging that the latter had appropriated oil from the former's reservoir and dam, claimed damages and prayed for judgment enjoining the Standard Company from taking oil from the leased premises. The trial court found the issues of law and fact in favor of the Salvage Company and entered judgment in its favor. On appeal the Supreme Court of Arkansas held that:

"Under such circumstances, two such leases would be wholly repugnant to each other, and the prior lease would be paramount and superior".

We quote further from the opinion:

"The rights granted to the lessee, and which passed by Mesne conveyances to the Standard Company, were not a license, but an interest and easement in the land itself. Ewert v. Robinson, 8 Cir., 289 F. 740; Smith v. McCullough, 8 Cir., 285 F. 698; Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A.L.R. 352; Barnsdall v. [Bradford] Gas Co., 225 Pa. 338, 74 A. 207, 26 L.R.A.,N.S., 614; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301–310, 230 S.W. 286, 19 A.L.R. 430. The instrument under which the Standard Company was operating being a lease, and conveying an interest and easement in the leased premises to the lessee, the lessor had no right by a subsequent lease to convey any interest that would be in conflict with such prior lease, and those holding under the subsequent instrument could not enter upon the premises, and exercise alleged rights in conflict with the rights of those claiming under the prior lease, without the knowledge, consent, or acquiescence, and over the protest, of those holding under the prior lease."

And in the later case, Clark v. Dennis, 172 Ark. 1096, 291 S.W. 807, the Supreme Court of Arkansas quoted with the approval the case of Standard Oil Co. of Louisiana v. Oil Well Salvage Co., supra.

In the case of McCracken v. Hummel, 43 Cal.App.2d 302, 110 P.2d 700, 701, the Supreme Court of California said:

"It is now settled that an oil lease for an indefinite period creates in the lessee an estate in real property. Callahan v. Martin, 3 Cal.2d 110, 43 P.2d, 788, 101 A.L.R. 871; Pimentel v. Hall-Baker Co., 32 Cal.App.2d 697, 90 P.2d 588; Andrews v. W. K. Co., 35 Cal. App.2d 41, 94 P.2d 605".

In the case of Dallapi v. Campbell, 45 Cal.App.2d 541, 114 P.2d 646, 649, it is stated:

" 'Under the usual oil and gas lease, the owner-lessor transfers to his lessee his right to drill for and produce oil and other substances. The right of the lessee presents a clear case of a profit *a prendre* in gross, a right to remove a part of the substance of the land. * * * This profit *a pendre* vests in the lessee an incorporeal hereditament, a present estate, an interest in the land, which is a chattel real if it is to endure for years' ".

In the decision in the case of Provin v. Continental Oil Co., 49 Cal.App.2d 417, 121 P.2d 740, 744, it was said:

"It is true that the lessee of an oil lease has an interest or estate in real property. Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871."

In the syllabus of the Texas case of Carroll v. McCarthy, Tex.Civ.App., 129 S.W. 2d 1201, it states that:

"A mineral leasehold estate is an 'estate in land'."

In another Texas case, Gulf Oil Corp. v. Marathon Oil Co., 137 Tex. 59, 152 S.W. 2d 711, 724, it is said:

"In this state oil and gas lessees are owners of estates in land."

And in the Kentucky case of Cannon v. Carr, 292 Ky. 793, 168 S.W.2d 21, 22, it was held that:

"A lease of land is the conveyance of an estate in realty for it divests the owner for a given time of his right of possession and control. Mattingly's Ex'r v. Brents, 155 Ky. 570, 159 S.W. 1157. And as aptly said in Tiffany, Real Property, Sec. 80: 'As stated before, the reference to a lease as an "Agreement" or a "Contract" has the effect of obscuring the important fact that it is a conveyance, transferring an estate to the lessee, a fact which is clearly recognized by the first class of statutory provisions above referred to.' "

The leases under consideration in the instant case are identical with or similar to the leases considered in the decisions which we have cited herein. We conclude therefore that oil, gas and mineral leases are conveyances of interests in real property under the provisions of Section 9–0604.

In construing subdivision 4 of Section 9–0604 another important feature of said statute may properly be considered. It provides that an *agreement* for the leasing, or for the sale, of real property, or of an interest therein, must be in writing in order to hold the party to be charged. In other words, the statute has reference to the agreement to make a lease rather than to the lease or the instrument of conveyance or of sale of real property or of an interest therein. This is clearly stated in Tiffany Real Property Third Ed. Section 80, page 120 P.

"Properly speaking, an 'agreement (or contract) for leasing' means an agreement to make a lease, and the fact that these statutory provisions usually invalidate in terms an agreement for leasing 'or for the sale of' an interest in land would seem to show that this is the proper construction of the language used, an agreement to make a lease and an agreement to sell being both executory contracts, clearly distinguishable from a lease or conveyance in fee, either of which involves the actual transfer of an estate. Thus regarded, the provisions here in question would correspond to the fourth section of the English Statute, which provides that no action shall be brought on any contract or sale of lands, or any in-

terest in or concerning them, unless the agreement or some memorandum thereof is in writing, signed by the person to be charged. That this was the view of the persons who prepared the Revised Statutes of New York, from which the provisions has been adopted in other states, appears from their own statement. So far as regards either this state, or the other states in which such provision is found in addition to a provision of the character before referred to, expressly invalidating oral leases for over one year, the provision is, if regarded as referring to a lease rather than a contract to make a lease utterly superfluous."

And in Tiffany Landlord and Tenant Vol. 1, Section 25, page 227 it is stated:

"In a number of states there is a provision to the general effect that an 'agreement (or contract) for the leasing of land' for longer than one year is invalid if not in writing, the modes of expression varying to some extent, as in the class of provisions previously referred to. The distinguishing characteristic of this class of enactments is that they speak of an 'agreement' or 'contract' for leasing rather than of a lease or conveyance. As before stated, the reference to a lease as an 'agreement' or a 'contract' has the effect of obscuring the important fact that it is a conveyance, transferring an estate to the lessee, a fact which is clearly recognized by the first class of statutory provisions above referred to. Properly speaking, the expression an 'agreement (or contract) for leasing' means an agreement to make a lease, and the fact that these statutory provisions usually invalidate in terms an agreement for leasing 'or for the sale of' an interest in land would seem to show that this is the proper construction of the language used, an agreement to make a lease and an agreement to sell being evidently both executory contracts, clearly distinguishable from a lease or conveyance in fee, either of which involves an actual transfer of an estate."

The statute must therefore be construed to mean exactly what it states in clear and unmistakable language that it is the *agreement* or some note or memorandum thereof for the leasing for a longer period than one year etc., that is required to be in writing.

The next question to be considered is whether under the language of Subdivision 4 of Section 9–0604 Supra, the term "party to be charged" includes both the vendor and vendee. It provides that An agreement for the leasing for a longer period than one year, or for the sale of real property or an interest therein, is invalid unless the same or some note or memorandum thereof is in writing and subscribed by the *party to be charged;* and that such agreement if made by an agent of the party so charged is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged.

The question thus presented is as to what is meant by the term "party to be charged". The phrase or term "party to be charged" has not been construed by the Supreme Court of this State, but numerous other States have construed the term with the result that two rules have been established.

The one rule holds that the "party to be charged" within the meaning of the Statute of Frauds is the seller or vendor. This rule has been adopted by the courts of Tennessee and Kentucky. The other rule holds that the "party to be charged" is the defendant to the action and must be signed by him whether he be the vendor or the vendee. This rule has been adopted by Idaho, Indiana, Arkansas, Oklahoma and California.

In the case of Mitchell v. Schmelzer, 191 Okl. 646, 132 P.2d 332, 333, the plaintiff brought an action against the defendant to recover on a promissory note in the sum of $500 executed and delivered by the defendant and secured by a mortgage on an undivided half interest in the mineral rights on a parcel of land. Judgment was demanded for the amount of the note and for foreclosure of the mortgage. The defendant admitted the execution and delivery of the note and mortgage but alleged that

thereafter the parties entered into a contract whereby the plaintiff agreed to buy the said one half interest in the mineral rights covered by the mortgage, pay $1,000 cash and cancel defendant's note for $500. The case was tried to a jury and a verdict returned in favor of the defendant and the plaintiff appealed. The Supreme Court of Oklahoma in reversing the judgment said:

"It is now well established that the statute of frauds applies to the vendee as well as the vendor, and the words, 'the party to be charged,' have been generally defined to mean the party against whom the contract is sought to be enforced, whether this party be the vendor or. the vendee. Jennings. v. New York Pet. Royalty. Corp., 169 Okl. 528, 43 P.2d 762; Davis v. Holman, 163 Okl. 59, 20 P.2d 575; Stegall v. Jack, 172 Okl. 154, 44 P.2d 97; Aikman v. Evans, 181 Okl. 94, 72 P.2d 479. No contention is made that plaintiff, the purported vendee herein, signed a written contract or any note or memorandum of any agreement for the purchase of the property involved herein. No contention is made that there was sufficient partial performance of the contract to take the case out of the operation of the statute' of frauds. It appears that defendants have failed to establish a valid contract for the purchase of said property". The Oklahoma statute of frauds is identical in language with subdivision 4 of section 9–0604.

In the Indiana case of Graham v. Henderson Elevator Co., 60 Ind.App. 697, 111 N.E. 332, 335, the Supreme Court of Indiana said:

"'The party to be charged,' under the statute of frauds, means the defendant to the action. The memorandum must be signed by him, but need not necessarily be signed by the plaintiff in the suit. Newby v. Rogers, 40 Ind. 9–12; 20 Cyc. p. 272.

"Where it is sought to enforce a contract alleged to be evidenced by a memorandum sufficient to take it out of the operation of the statute of frauds, or to hold a party liable in damages for a breach of the alleged contract, and the party against whom liability is sought to be enforced has not signed any memorandum containing the essential elements of the contract, but has signed another instrument or writing in which it is claimed such reference is made to the former as to amount to an adoption and acceptance of the terms thereof to be sufficient under the statute (section 7469, Burns 1914), the signed memorandum or instrument must contain a clear and definite reference to such other writing or instrument and so identify it as to make its provisions a part of the signed memorandum or instrument relied on." Numerous citations.

In the case of Chicago Mill & Lumber Co. v. Matthews, 163 Ark. 571, 260 S.W. 963, 964, the plaintiff brought an action for specific performance of a contract to sell certain lands, alleging that the defendant had agreed to purchase the same at an agreed price; that the plaintiff executed and delivered to the defendant a warranty deed which the defendant refused to accept. Defendant denied that plaintiff was the owner of the land and further denied that he had agreed to purchase it. The lower court held that the defendant was entitled to a small part of the land by adverse possession, and plaintiff appealed to the Supreme Court. We quote from the decision.

"As we have said, this suit was brought to enforce the specific performance of a contract of sale. The company, the owner of the land, brought the suit, and has prayed that relief.

"The agreement sued on was one to convey the title to land and to be valid should have been in writing, but was not. It is true the defendant did not plead the statute of frauds, but he did deny the existence of the contract sued on. Under these circumstances it de-

volved upon the plaintiff to prove the existence of a valid contract, which must have been a written contract. Cook v. Cave, 163 Ark. 407, 260 S.W. 49.

"It is true the vendor in the deed tendered brings this suit, which would, of course, be a waiver of the statute by it, but the party here sought to be charged is the vendee, and in the case of Jones v. School District, 137 Ark. 414, 208 S.W. 798, we held that 'the words, "the party to be charged," refer not to '"the party to be charged" with the contract, but to "the party to be charged" in the action; that is, the defendant.'

"We have held that a suit for specific performance of a contract to convey land may be brought by the owner of the land as well as by the prospective purchaser. Garrison v. Geren, 159 Ark. 9, 251 S.W. 39; Robinson v. Florence Sanitarium, 149 Ark. 355, 232 S.W. 590; Dollar v. Knight, 145 Ark. 522, 224 S.W. 983; Wilkins v. Lanes, 126 Ark. 339, 190 S.W. 99; Ex parte Hodges, 24 Ark. 197. But that relief cannot be awarded here, primarily because the company does not prove a valid and enforceable contract, for the reason that the contract was not in writing."

In the case of Jones v. School District, 137 Ark. 414, 208 S.W. 798, 799, the Supreme Court of Arkansas said:

"The great weight of authority is that the words 'the party to be charged' refer, not to 'the party to be charged' with the contract, but to 'the party to be charged' in the action—that is, the defendant."

The State of California has a statute, Section 1973, subdivision 4, Code Civ. Proc., of which is identical with subdivision 4 of our Section 9-0604 Supra, and has an additional clause providing that:

"An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" must be in writing.

The section quoted from the California statute makes it clear that in that state the authority of an agent to purchase or sell real estate must be in writing.

In the case of Harper v. Goldschmidt, 156 Cal. 245, 104 P. 451, 453, 28 L.R.A., N.S., 689, decided in 1909 the Supreme Court of California said:

"But in all of the states, like California to-day, where the statute requires the signature of the party to be charged, when effort is made to charge the vendee, it is uniformly held that the signature of the vendor plaintiff is not sufficient, but that the signature of the defendant vendee is absolutely essential, saving in the exceptional class of cases where the conduct of the vendee has amounted to such a performance, or part performance, of the contract as to relieve the contract from the necessity of his signature."

Under the decisions cited the term "party to be charged" as used in subdivision 4 of Section 9-0604 Supra, clearly includes both vendor and vendee. In order to consummate a sale or a transfer of land or an estate or interest therein at least two parties are necessary to the transaction; and to render the rights and equities of the parties equal the "party to be charged" must apply to either party. Such construction of the term "party to be charged" we believe is just and equitable.

In the case of Stegall v. Jack, 172 Okl. 154, 44 P.2d 97, 99, the facts were somewhat similar to the facts in the case at bar. The plaintiffs had negotiated with the agent of the defendant for the sale of a farm at a certain price. They executed a deed to the defendant, placed it in escrow in a bank together with a draft on the defendant, which draft was also signed by L. R. Stegall, defendant's agent. The defendant refused to accept delivery of the deed and plaintiffs brought action and recovered judgment. On appeal to the Su-

preme Court the judgment was reversed. We quote from the opinion.

"Even if it should be conceded that the signing of the deed and placing it in escrow by plaintiffs together with the draft drawn on B. F. Stegall and signed by L. R. Stegall was sufficient to comply with the provisions of section 9455, O.S.1931, that 'some note or memorandum thereof, be in writing'; even then, the plaintiffs could not prevail for the reason that it is not 'subscribed by the party to be charged,' and even if it should further be conceded that L. R. Stegall's act in signing the draft be considered as agent of B. F. Stegall, yet this would not constitute an enforceable contract for the reason that it fails to comply with the further provisions of this section of the statute providing that such contracts are invalid 'unless the authority of the agent be in writing, subscribed by the party sought to be charged.'"

Counsel for plaintiff argues that under Section 47–1001 NDRC 1943 the agreement of the defendant to accept the leases and assignments thereof need not be in writing and that the agreement for transfer is sufficient when signed by the vendor. The statute provides:

"An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by his agent thereunto authorized by writing. This does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

■ There is no conflict between Subdivision 4 of Section 9–0604 and Section 47–1001. Under the former the "party to be charged" may be either the vendor or the vendee or their agents, while the latter requires a transfer by the vendor to be in writing. These two statutes have been part of the territorial and state law since 1877, —in fact these statutes are found in the draft of the Civil Code of the State of New York in 1862. They are included in the territorial Codes of Dakota Territory of 1877 and 1887, and in the Revised Codes of North Dakota of 1895, 1899, 1905, 1913 and 1943 without any material change in the form or language. However, they are separate and distinct statutes, that is, they are not part of the same enactment. Section 47–1001 NDRC 1943, was originally enacted as an independent statute dealing only with an estate in real property, other than an estate at will, or for a term not exceeding one year, and has been carried as a separate statute in the several Code Revisions down to the present time without any material change. Its provisions apply only to the vendor or transferor and have no reference to the vendee or transferee; but it makes certain that an estate in real property as therein defined can be transferred only by an instrument in writing signed by the *"party disposing of the same"* or by *"his agent thereunto authorized by writing."*

■ We are agreed that under the law and the decisions cited oil, gas and mineral leases are transfers of interests in real property and that an agreement to accept or purchase such leases or assignments thereof is required to be in writing signed by the party to be charged whether such party be the assignor or the assignee; and if such agreements are executed by an agent his authority must be in writing subscribed by the party sought to be charged.

In the instant case there is no evidence in the record that W. M. Berger as agent of the defendant was authorized in writing to accept the leases and assignments under consideration; neither is there any evidence of part performance by the defendant either by payment or by taking possession under the terms of the assignments upon which the action is brought.

The assignments were forwarded to the defendant by mail and he returned them with his refusal to accept them endorsed thereon.

For the foregoing reasons we conclude that the plaintiff has failed to establish a cause of action and that the defendant's motion for judgment notwithstanding the verdict should have been granted.

The judgment is reversed and the case remanded with directions to vacate the judgment and dismiss the action.

MORRIS, C. J., and BURKE and GRIMSON, JJ., concur.

JOHNSON, J., did not participate.